# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

RE: DELTRESS A. HAVERLY

    Plaintiff,

    Vs.

GIRLING COMMUNITY CARE KINDRED,

    Defendant

CIVIL ACTION NO.4:20-cv-04206

United States Courts
Southern District of Texas
F I L E D

JAN 2 7 2021

Nathan Ochsner, Clerk of Court

PLAINTIFFS RESPECTFULLY ASKED COURT TO ALLOW THE ADDITIONAL EXHIBITS AND CURRENT AND CORRECTED IN ORDER EXHIBITS -A THROUGH -G TO BE SUBMITTED AND ENTERED INTO CASE FILING TO REVIEW OF ACTUALLY FACTS TO SUPPORT CASE

RESPECTFULLY,

DELTRESSA. HAVERLY

1.EXHIBIT A- COPY OF THE FIRST COPY OF THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION INTAKE QUESTIONAIRE SUBMITTED TO EEOC 5-8-2017 AND THE ADDITIONAL EXPLAINATION OF MY DISCRIMINATION THAT WAS SUBMITTED TO EEOC FOR THE COURT TO REVIEW. AND THE FAXED CONFIRMATION WHEN I FAXED IT TO EEOC 5-8-2017. SEE BELOW AT THE BOTTOM PAGE AND YOU WILL SEE I SELECTED THE BOX FOR EEOC TO FILE A CHARGE AGAINST MY FORMER EMPLOYER

2.EXHIBIT B- COPY OF SECOND U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION INTAKE QUESTIONNAIRE SUBMITTED BY FAX TO EEOC REPRESENTATIVE ARTURO 5-31-2017. DATED 5-8-2017 AS INSTRUCTED BY REPRESENTATIVE ARTURO OF EEOC TO ADD WITH THE FIRST QUESTIONNAIRE EXHIBITA IN WHICH WAS SUBMITTED 5-8-2017 TO SUPPORT MY COMPLAINT IN
EXHIBIT C- SEE BELOW AT THE BOTTOM PAGE OF QUESTIONNAIRE AND YOU SEE I SELECTED THE BOX FOR EEOC TO FILE A CHARGE AGAINST MY FORMER EMPLOYER ON BOTH QUESTIONNAIRES IN EXHIBIT A AND EXHIBIT B. IN WHICH THEY FAILED TO DO SO UNTIL 7-30- 2020. BUT EEOC STILL USED THE NUMBER ON MY CHARGE THAT WAS USED ON MY QUESTIONAIRE DISCRIMINATION COMPLAINT I FILED 5-8-2017. ALSO AS I PRIOR MENTIONED WHEN THEY MOVED FORWARD WITH THE CHARGE. WITH THIS ADDITIONAL EVIDENCE HOW COULD YOU SAY THIS IS A NEW DISCRIMINATION COMPLAINT AND CHARGE.AND THEY USED MY CHARGE NUMBER FROM 5-8-2017 AS YOU WILL SEE ON THE TOP OF THE PAGE IN EXHIBIT B. AND ON THE CHARGE PF DISCRIMINATION TOP RIGHT HAND SIDE OF THE PAGE ON EXHIBIT D AND ON THE TOP LEFT HAND PAGE OF THE DISMISSAL AND NOTICE OF RIGHTS TO SUE. YOU WILL FIND THE SAME CASE NUMBER IN EXHIBIT D.

3.EXHIBIT C- COPIES TO REVIEW SHOWS WHERE I REACHED OUT TO CONGRESSWOMAN SHEILA JACKSON LEE ON JUNE 8TH 2017 A WEEK AFTER SPEAKING WITH EEOC IRVING WILKERSON ON 6-1-2017 OR 6-2-2017 PER EEOC DATES IN THEIR SYSTEM INFORMING HER THAT I FILED A DISCRIMINATION COMPLAINT WITH EEOC AND I ASKED HER TO ASSIST ME ON IT. SHE WROTE ME BACK 6-18-2017 AGREEING TO ASSIST ME ON MY CASE. AGAIN PROOF THAT IT'S NO WAY I TOLD EEOC REPRESENTATIVE RAYFORD O.IRVING WILKERSON THAT I CHANGED MY MIND ON FILING A DISCRIMINATION CHARGE. ALSO IN EXHIBIT C YOU WILL SEE COPIES AND DATES IN 2017 AFTER JUNE 1ST 2017 OE JUNE 2ND 2017 THAT I REACHED OUT TO SHEILA JACKSON

LEE CONGRESSWOMAN. AS ADVISED TO DO SO BY RETIRED JUDGE FRED ASHMEAD. ALSO IN EXHIBIT C- YOU WILL SEE COPY OF EMAILS DATED11-13-2017 ADDRESSED TO JANET DHILLION EEOC CHAIR COMMISSIONER REACHING OUT TO HER REGARDING MY EEOC DISCRIMINATION COMPLAINT BECAUSE NO ONE AT THE EEOC HOUSTON PUT DIVISION WOULD RETURN MY CALLS. AND A COPY OF A EMAIL DATED DECEMBER 11,2017 ADDRESSED TO CONGRESSWOMAN SHEILA JACKSON LEE ASKING HER ABOUT FINDING OUT ABOUT A UPDATE AND COURT DATE ON MY EEOC DISCRIMINATION COMPLAINT BECAUSE NO REPRESENTATIVE WITH EEOC WOULD CALL ME BACK. SINCE SHE AGREED TO ASSIST ME WITH MY CASE I REACHED OUT TO HER. ALSO IN EXHIBIT C- YOU WILL SEE WHERE I EMAILED JAMES FOWLER AND EEOC REPRESENTATIVES ABOUT REQUESTING MY ENTIRE FILES FROM 5-8-2017 THROUGH 2020. HOWEVER AS PRIOR MENTIONED TO THE COURT THEY ONLY SENT ME WHAT THEY HAD AVAILABLE IN THEIR DIGITAL SYSTEM AND AFTER I RECEIVED ONLY A FEW PAGES FROM THEM I EXPRESSED TO THEM THAT I NEEDED MY ENTIRE FILE TO SUBMIT TO THE COURT TO REVIEW AND THEY SAID UNSURE IF THEY STILL HAD EVERYTHING AND IF SO IT COULD POSSIBLE BE STORED AWAY PER GABRIEL CERVANTES AND HANNAH YE OF EEOC.

4. EXHIBIT D- IS A COPY OF THE DISCRIMINATION CHARGE IN WHICH WAS FILED 7-30-2020. AFTER CONTACTING FORMER PRESIDENT DONALD TRUMP AND GOVERNOR GREG ABBOT IN WHICH MADE IT POSSIBLE FOR ME TO GET IN CONTACT WITH EEOC SINCE THE WAS AVOID ME AND NOT RETURNING MY CALLS AFTER NUMEROUS ATTEMPTS. NEXT AFTER I FOUND OUT EEOC CLOSED MY CASE WRONGLY AND WITH ERROR. BECAUSE OF THE NOTES THAT RAYFORD O. IRVING WILKERSON APPOINTED INVESTIGATOR OF EEOC TO MY CASE PUT IN THEIR SYSTEM. AS PRIOR MENTIONED ONCE I FOUND OUT ABOUT THE ERROR ON EEOC PART ON JULY 16 TH 2020 AND DISPUTED BECAUSE IT WAS NOT TRUE AND HAD THE PROOF TO PROVE IT. GABRIEL CERVANTES DISTRICT DIRECTOR ALLOWED ME TO GO FORWARD WITH THE CHARGE. ALSO INCLUDED IN EXHIBIT D- YOU WILL SEE A COPY OF U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION DISMISSAL AND NOTICE OF RIGHT TO SUE DATED 9-14-2020 IN WHICH IT GAVE ME 90 DAYS TO FILE SUE FROM THE ISSUANCE DATE. HOWEVER THE DISMISSAL AND NOTICE OF RIGHTS TO SUE STATED THAT THEY THEY WERE CLOSING ITS FILE ON THE CHARGE FOR THEIR REASON- CHARGE WAS NOT FILED IN A TIMELY MANNER. HOWEVER I MADE A FORMAL COMPLAINT AND DISPUTE AGAINST EEOC RAYFORD O. IRVING AND BOOKER T. MORRIS DEPUTY DIRECTOR OF WASHINGTON DC IS ONE OF THE REPRESENTATIVES THAT'S LAUNCHING THIS COMPLAINT AND INVESTIGATION INTO THIS MATTER. IN HAVE A DISPUTE GOING ON WITH EEOC ABOUT THEIR DISMISSAL BECAUSE OF THE PROOF IN WHICH I HAVE PRESENTED SHOWING THAT ITS NOT WAY I CHANGE MY MIND ON THE CHARGE AND IT WAS THEIR ERROR. GABRIEL CERVANTES OF EEOC STATED

THAT I HAVE THE RIGHT TO SUE BUT HE COULDN'T ALLOW HIS ATTORNEYS TO ADDRESS THE COMPLAINT BECAUSE OF THEY THOUGHT I CHANGED MY MIND IN JUNE THE 1ST OF 2017 ON FILING THE DISCRIMINATION COMPLAINT IN WHICH MY PROOF SHOWS I DID NOT CHANGE MY MIND. AND THEIR NOTES DON'T LINE UP WITH THE EVIDENCE. ALSO ATTACHED IN EXHIBIT D- IS COPIES OF BOTH QUESTIONNAIRES IN WHICH IS ENCLOSED IN EXHIBIT A AND B. AND A COPY OF THE LETTER IN WHICH I SENT TO EEOC

5.EXHIBIT E- COPIES FROM UNUM THE FMLA DEPARTMENT IN WHICH APPROVED MY LONG AND SHORT TERM DISABILITY DATED 4-13-2017. JENN HAYES DISABILITY BENEFITS SPECIALIST WITH( UNUM) FMLA DEPARTMENT MAILED ME ALL THE SUPPORTING EVIDENCE TO SUBMIT TO THE COURT TO SHOW PROOF THEY APPROVED MY FMLA AND SHORT AND LONG TERM DISABILITY. AND APPROVED PAYMENTS TO BUT SUBMITTED TO ME, MS. HAYES ALSO WANTED MYSELF AND COURT TO KNOW THEY DID THEIR JOB AND WASN'T LIABLE THAT IT WAS GIRLINGS/KINDREDS. AND THEY ARE RIGHT THE EVIDENCE SUPPORT THEY STATEMENT. BUT DEFENDANT'S <u>BLOCKED</u> GIRLING'S PAYROLL DEPARTMENT FROM ISSUING ME A CHECK. HOWEVER DEFENDANTS ARGUE THAT I DIDN'T RAISE INQUIRIES ABOUT MY FMLA UNTIL NOVEMBER OF 2020 AGAIN THEY ARE INCORRECT. THE ATTACHED DOCUMENTS FROM UNUM (FMLA) DEPARTMENTS SUPPORTS MY CLAIM. ALSO I HAVE REACHED OUT TO THE UNUM(FMLA) EACH YEAR FROM 2017 TO 2020 ABOUT MY CLAIM. THEY HAVE ALL THE NOTES DOCUMENTED IN THEIR SYSTEM AND YOU WILL SEE THAT THE DEFENDANT'S WAS AGAIN INCORRECT SAYING I DIDN'T REQUEST FMLA UNTIL NOVEMBER OF 2020. HOWEVER THE SUPPORTED EVIDENCE IS ATTACHED.MY DOCTOR STOPPED SENDING PAPERWORK TO( UNUM FMLA) BECAUSE GIRLING'S/ KINDREDS BLOCKED ALL MY APPROVED PAYMENTS TO COME TO ME. ALSO IN EXHIBIT D- YOU WILL SEE COPIES OF PHYSICIANS NOTES OF MY DISABILITY AND NOT ONLY THE HEAVY BLEEDING AND FIBROID TUMORS. YOU WILL SEE ON 2-17-2017 WHERE TURNING INTO MY PREVIOUS JOB 6750 WEST LOOP SOUTH BELLAIRE BELLAIRE TEXAS 77401. A DOCTOR RAN ME OVER AND KNOCKED MY CAR FROM SIDE OF THE ROAD TO THE NEXT SIDE WHICH CAUSED A RE INJURY TO THE BLEEDING, HEADACHES, MOBILITY AND AMBULATION ISSUES AND BECAUSE I VALUED MY JOB AND WAS AFRAID OF LOSING IT I WENT ON BACK IN THE BUILDING TO WORK REGARDLESS OF MY INJURIES. THE AMBULANCE SUGGESTED I GO TO THE HOSPITAL WITH THEM I REFUSED BECAUSE DEFENDANT BETTY BETHEA THREATEN ME BEFORE ABOUT IF I COULDN'T ME THERE TO DO THE JOB SHE WOULD HIRE SOMEONE TO WHEN I ASKED HER TO ACCOMMODATE ME TEMPORARILY TO WORK FROM HOME. . I ALSO HAVE NERVE DAMAGE ON MY RIGHT SIDE AND TWO HERNIATED DISC IN MY LOWER BACK . ALSO YOU WILL SEE SOME OF THE DOCUMENTATION WHERE THE PHYSICIAN TOOK ME OFF MY FEET ON 4-13-2017 AND PLACED ME ON BEDREST BECAUSE OF THE INJURIES WAS GETTING REST AND DEFENDANT

BETTY BETHEA DENIED ACCOMMODATING ME TEMPORARILY TO WORK FROM HOME AS SHE DID OTHER CO-WORKERS OF THE OPPOSITE RACE.

6.EXHIBIT F- COPIES OF SOME OF M PERFORMANCE EVALUATIONS FROM GIRLINGS- HARDEN IN WHICH WAS APART OF GIRLINGS COMMUNITY AND KINDRED AT HEART. YOU WILL SEE I HAD HIGH SCORES FROM 4.9, AND 4.4 I HAD MORE PERFORMANCE EVALUATION FROM THROUGHOUT THE YEARS BUT THEY ONLY MAILED ME A COUPLE OF THEM SOME ARE 5.0 BUT I DON'T HAVE THEM TO SUBMIT FOR REVIEW TO THE COURT BECAUSE THE COMPANY DIDN'T SEND THEM TO ME AS REQUESTED. I REACHED OUT TO GIRLING COMMUNITY CARE SUPERVISOR AND ASKED FOR THEM BUT THEY ONLY MAILED A COUPLE OF THE PERFORMANCE EVALUATIONS TO ME THEM. BUT THE COURT CAN REVIEW THEM TO GET A IDEA ON MY JOB PERFORMANCE. ALSO FINAL DOCUMENT IN EXHIBIT IS VESA COMPLIANCE COUNTS WITH THE COMPANY. AND WHAT THAT DOCUMENT SHOWS THE PERCENTAGE LEVEL ON EACH CARE COORDINATOR SUPERVISOR AND THEIR CASELOAD OF COMPLIANCE. AS YOU WILL SEE MY SUPV- SUPERVISOR NUMBER WAS 303 AND MY PERCENTAGE WAS AT 99 PERCENT ALMOST 100 PERCENT IN COMPLIANCE RULES OF THE STATE OF TEXAS AND THE COMPANY POLICY.

7.EXHIBIT G- FINAL EXHIBIT TO SUBMIT. EXHIBIT G- IS A COPY OF FROM DAVID CAUSBY EVP, PRESIDENT KINDRED AT HOME. SUBMITTED ME A PLAQUE AFTER MY TWENTY YEARS OF SERVICE. THE PLAQUE AND ACKNOWLEDGEMENT NOTE INDICATED MY RECENT ACHIEVEMENT. AND MILESTONE IN MY CAREER. IT ALSO TALKED ABOUT MY COMMITMENT, LOYALTY AND DEDICATION TO THE COMPANY. IT TALKS ABOUT MY LOYALTY PLAYING A TREMENDOUS PART OF MY SUCCESS. IN WHICH TELLS YOU A LOT ABOUT ME AND MY CHARACTER AND HOW I LOVE MY JOB AND LOVED TAKING GREAT CARE OF THE PATIENTS.

I SHOWED DEDICATION, CONFIDENCE, RELIABILITY, TEAMWORK, INDEPENDENCE, LEADERSHIP, INTERPERSONAL/COMMUNICATION SKILLS, SELF- AWARENESS AND INTEGRITY WHILE WORKING FOR THE COMPANY 22 PLUS YEARS. I HAD BEEN THERE LONGER THAN ANY OF THE PEOPLE THERE IN WHICH SHARE THE SAME ROLE AND POSITION AS I. AFTER BEING REJECTED FOR SEVERAL YEARS UNDER THE SUPERVISION BETTY BETHEA FOR EVERY HIGHER ROLES AND POSITIONS IN WHICH I APPLIED FOR AND DENIED RAISES IN WHICH I DESERVE. AND SHE GAVE ROLES I APPLIED FOR HER TO HER FAMILY MEMBERS AND CLOSE FRIENDS ALL CAUCASIAN EVEN RAISED HER HER DAUGHTER CECEILA SIEVERS PAY UP TO $20.00 AND SHE DIDN'T HAVE THE JOB DESCRIPTION IN WHICH I HAD NOR THE YEARS AND EXPERIENCE LIKE ME. CECEILA SIEVERS WAS A RECOVERING ALCOHOLIC THAT CAME FROM WORKING AT A FAST FOOD RESTAURANTS MAKING HAMBURGERS.MY FORMER APPOINTED SUPERVISORS AMY CARSON, DAVID

ESHO, AND MELLONIE ALL PUT IN A REQUEST FOR RAISES FOR ME AND I WAS DENIED EVERY TIME BECAUSE BETTY BETHEA (DEFENDANT )IS THE ONE THAT HAD TO APPROVED THEM TO REFLECT ALL THE JOB DUTIES IN WHICH WAS ADDED ON ME, I WAS THE ONLY CARE COORDINATOR WITH MULTIPLE ROLES. I WAS A CARE COORDINATOR, I HAD TO STAFF SPECIAL ATTENDANTS DAILY FOR OVER 3,000 CLIENTS AND ON CALL WHEN THE OFFICE CLOSE FROM 5PM TO THE NEXT DAY AND EVERY HOLIDAY AND EVERY OTHER WEEKEND. BUT FORMER VICE PRESIDENT WAYNE DOUGLAS PAID ME $25.00 A NIGHT FOR ON CALL FOR THE ON- CALL IN WHICH WAS A ON CALL PAY. BUT FOR ALL THOSE YEARS AND MULTIPLE ROLES AND ME BEING WITH THE COMPANY LONGER THAN BETTY BETHEA I ONLY MADE $19.00 AND SOME CHANGE AND EVERYONE  THERE PAST AND PRESENT THAT WORK WITH ME CAN ATTEST I WAS HE MOST ADVANCE THERE A AND THE MOST OVERACHIEVER AND EXCELLED IN EVERY TASK IN WHICH WAS GIVEN TO ME. I HAVE BEEN GIVEN RAISES SEVERAL YEARS AGO BUT THEY STOPPED BUT THE ADDITIONAL ROLES AND RESPONSIBILITIES KEPT GROWING ON ME. IN SPITE OF HOW I WAS TREATED I STILL OPERATED IN EXCELLENCE HOPING AND PRAYING FOR A CHANGE AND TO BE ACKNOWLEDGED IN BY DEFENDANT TO REFLECT MY ACCOMPLISHMENTS THERE WHILE WORKING WITH THE COMPANY. I RESPECTFULLY ASK THE COURT  TO REVIEW THE TRUE FACTS AND EVIDENCE AND MAKE THE RIGHT DECISION TO ALLOW ME TO EXERCISE MY RIGHTS UNDER Title VII,ADA,and ADEA.


I COPY OF THESE EXHIBITS A THROUGH G HAS BEEN EMAILED AND MAILED TO DEFENDANT'S ATTORNEY AT
 Juliana.Gaige@jacksonlewis.com
   - 1415 Louisiana Street, Suite 3325 Houston, texas 77002
Michael.DePonte@jacksonlewis.com
  -  500 N. Akard Street, Suite 2500
    Dallas, Texas 75201



RESPECTFULLY,



*DELTRESSA. HAVERLY*

# Exhibit

# A

| TRANSMISSION VERIFICATION REPORT |
| --- |

|  |  |
| --- | --- |
| TIME | 05/08/2017 16:35 |
| NAME | |
| FAX | |
| TEL | |
| SER.# | |

| | |
| --- | --- |
| DATE,TIME | 05/08 16:35 |
| FAX NO./NAME | 7136514987 |
| DURATION | 00:00:34 |
| PAGE(S) | 11 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)

**1. Personal Information**

Last Name: _Haverly_ First Name: _Deltress_ MI: _Ann_

Street or Mailing Address: _9711 Cedar Bluff Drive_ Apt or Unit #: _____

City: _Hou Stn_ County: _Harris_ State: _TX_ Zip: _77064_

Phone Numbers: Home: (832) 752-1308 Work: ( N/A )

Cell: (832) 752-1208 Email Address: _barbie 179 @ gmail.com_

Date of Birth: _4-7-74_ Sex: ☐ Male ☒ Female Do You Have a Disability? ☒ Yes ☐ No

_On nerve damage side and two Bulk disk in lower back severe pains_

Please answer each of the next three questions. i. Are you Hispanic or Latino? ☐ Yes ☒ No

ii. What is your Race? Please choose all that apply. ☐ American Indian or Alaskan Native ☐ Asian ☐ White
☒ Black or African American ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? _Multi Race - Indian Black and Spanish deceded_

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:

Name: _M.S.M. Coffey_ Relationship: _Mother_

Address: _9711 Cedar Bluff Drive Hou Stn_ State: _TX_ Zip Code: _77064_

Home Phone: _281 802 1340_ Other Phone: ( )

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☒ Employer ☐ Union ☐ Employment Agency ☒ Other (Please Specify) _And Director Administrator Beth F. Bethea_

Organization Contact Information (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: _Girling Community Care Kindreds_

Address: _6550 W Loop South_ County: _Harris County_

City: _Bellaire_ State: _TX_ Zip: _77401_ Phone: (713) 780-1248

Type of Business: _Home health provider services for the Elderly and disabled_ Job Location if different from Org. Address:

Human Resources Director or Owner's Name: _Steven Morrison_ Phone: (512) 323-1536

Number of Employees in the Organization at All Locations: Please Check (✓) One

☐ Fewer Than 15 ☐ 15 – 100 ☐ 101 – 200 ☐ 201 – 500 ☒ More than 500

**3. Your Employment Data** (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☒ No

Date Hired: _January 7 1996_ Job Title At Hire: _Care Attendant_

Pay Rate When Hired: _4.00 an hour_ Last or Current Pay Rate: _$19.80 or close to it_

Job Title at Time of Alleged Discrimination: _Care Coordinator_ Date Quit/Discharged: _4-14-17_

Name and Title of Immediate Supervisor: _Mellonie Simon_

If Job Applicant, Date You Applied for Job _____ Job Title Applied For _____

4. What is the reason (basis) for your claim of employment discrimination?

*FOR EXAMPLE. If you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☒ Race ☐ Sex ☐ Age ☒ Disability ☐ National Origin ☐ Religion ☒ Retaliation ☐ Pregnancy ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing ii. family medical history iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: Overlooking me for many years for Higher Positions. But Giving them to her family and friends All Caucasian

If you checked genetic information, how did the employer obtain the genetic information? _____

---

Other reason (basis) for discrimination (Explain): Wrongfully termination While on Approved FmLA. And Refused to reasonable Accomodate me with my disabiliy when asked

5. What happened to you that you believe was discriminatory? Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A. Date: 4/14/17 Action: Wrongly terminated me While on Approved FmLA. In Which was approved 4-13-17 (Director)
Name and Title of Person(s) Responsible: Betty Faye Bethea (Administrator)

B. Date: 4-14-17 Action: See attached communication for more details on The discrimination Complaint
Name and Title of Person(s) Responsible Betty Faye Bethea - Director and Administrator

6. Why do you believe these actions were discriminatory? Please attach additional pages if needed.
Because I was on approved FMLA Approved on 4-13-17 She knew it and terminated me anyway Because of my Disability

7. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?
Violation of Company Policy In which wasn't true Acussed me of Knowingly Paying a PCA. 2 weeks Without Merit

8. Describe who was in the same or similar situation as you and how they were treated. For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. Jason Watley | (B) male | — | File Clerk b/up receptionist terminated him wrongly and Accussed him of Being Rude to a Client after its Proven It was him he |
| Dane | (B) Female | | terminated her wrongly Because Betty grandson called her a night she reported and was terminated for mental illness |
| B. | | | |
| Ruby Garcia | (Hispanic) Female | | Was terminated and Acussed of wrongly Paying PCA and the Family said it wasn't true But she was terminated for reporting Betty Bethea to H.R. |

2

Of the persons in the same or similar situation as you, who was treated *worse* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. | | | |
| B. | | | |

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|

A. JASON WATLEY - BLACK male. Suffers from mental Health He assisted on the Phones But WAS A file clerk. Terminated accused on being rude when the caller said. It was A female not

B. Ruby Garcia Hispanic - Terminated I were male. From complains to Human Resource about How Betty wrongly had me written up on something I didn't do while off

Answer questions 9-12 only if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9. Please check all that apply:
- [x] Yes, I have a disability
- [ ] I do not have a disability now but I did have one
- [ ] No disability but the organization treats me as if I am disabled

10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.)

Heavy Vaginal Bleeding from fibroids and I was prior Hit while across the street by mobile Automobile and It caused me nerve damage on my (R) side and two bulk herniated disk in my lower back

11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?
- [x] Yes [ ] No

If "Yes," what medication, medical equipment or other assistance do you use?
Pain medication approved by physican Tylenol Hydrocodiene. And to have a cane to help with Ambulation and mobility

12. Did you ask your employer for any changes or assistance to do your job because of your disability?
- [x] Yes [ ] No

If "Yes," when did you ask? 12-16 and 2 of 2017    How did you ask (verbally or in writing)? Verbally
December of 2016 And February of 2017

Who did you ask? (Provide full name and job title of person)
BETTY Faye Bethea a African American was my supervisor Betty HAD to be the one to give approval

Describe the changes or assistance that you asked for: I ask BETTY Bethea could I temporials work from Home Because of the Heavy Bleeding And IT WAS Hard for me To Concentrate and Ambulate from one area To the next.

How did your employer respond to your request? Employer refused And Told me That she needed me in the office And That IF I could Do The job That she would Hire some one That could. But she Allowed a few other of my co-workers work from

**13.** Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|---|---|---|---|

A. Susan Brooks - Assistant Director - She will tell the truth. She knows about the termination and the truth she was there.

B. Misty Garcia - Smith - Payroll clerk - She will tell how Betty Kept asking her to find something on me in my case load to help terminate me. She said Betty asked repeat

**14.** Have you filed a charge previously on this matter with the EEOC or another agency? ☐ Yes ☒ No

**15.** If you filed a complaint with another agency, provide the name of agency and the date of filing:

N/A

**16.** Have you sought help about this situation from a union, an attorney, or any other source? ☐ Yes ☒ No
Provide name of organization, name of person you spoke with and date of contact, Results, if any?

I Cant Afford a attorney thats white + file my Discrimination Complaint with EEOC to Investigate with their lawyers

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

---

**BOX 1** ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

---

**BOX 2** ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_DELORESSA Harvey_
Signature

5-8-17
Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a)
3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

4

# A Brief Summarization on my Discrimination, Wrongful Termination and Retaliation Claim Harrassment etc....

After you carefully review my documentation and statements from witnesses you will see not only was *I wrongfully terminated from work due to my medical disability and condition. And due to having to go to numerous doctors appointments in february of 2017 through my termination date. April the 14th 2017. Also for retaliation for me being placed on FMLA on April the 13th 2017 and talking to Steven Morrison in our Human Resources Department. But mainly because I was placed on FMLA, the department notified Betty Bethea that I was approved for FMLA on 4-13-2017 and because she never liked me being off work sick or not. Ieven asked her before I was taking off my feet can I work from home temporarily and she denied my request. She refused to accommodate me in the process of my medical condition. So my doctors had no choice but to take me off my feet because my condition worsened. If I was out sick she would call and say I need you here in the office. If you can't come in then I will hire someone who can then you can just stay home sick. It was so weird because I was never off. She didn't care if I was sick or not. I noticed that if I leave early for my doctors appointments she would always ask why I had to go to the doctor. I would come in early or leave late so basically I never missed any hours whether I was sick or not I worked and met all deadlines on assignments. Anyone can vouch that I rarely took off work. Also in the year of 2000 I was placed on Family Medical Leave due to being injured at clients home. Betty terminated me because she told me she needed me to work. I then told her I was on Family Medical Leave and she terminated me but Human Resources and Betty previous boss Wayne Douglas over ruled Betty termination and kept me employed with the company . You will see how I was injured in a client's home. The client was falling off the couch and I helped her and pulled my back .and the company overruled her decision and told her that she couldn't terminate me for being on FMLA. Since then she has blocked me from higher positions and promotions, and she constantly bullied and harassed me. As I mentioned to you in my other written documentation that I was taken off my feet from my doctors on 4-13-2017 and placed on FMLA in which is the ( **Family Medical Leave Act.**) Due to heavy bleeding and complications from my previous surgery in December the 23rd 2016 in which I was admitted into the Hospital. I was prior admitted into the Hospital for a blood transfusion due to having only 5percent hemoglobin of blood in my body in which I could have died. Also while on FMLA I had Long term and short term disability in which was approved. However I never received a payment from Kindred Healthcare. Unum in which is The Benefits Center in which handles the Short Term and Long Term Disability Claims approved for Benefits payments. To be paid to me on **Dates of : 5/11/2017, 6/8/2017, and 6/15/2017** in which I never received payments from that Department . I contacted Unum to see why I never received the payments they told me that I was approved for FMLA before I was terminated from work and that Kindred Benefits Marketplace was supposed to pay me and that they sent them the approval to pay me. They then gave me the number to call **Kindred Benefits Marketplace @ 1800.991.6171** to requested payments. However when I called the Kindred Benefits Marketplace to request payment and to see why I didn't receive any of the payments listed that I was prior approved for. I was told by them that*

*they were informed by Betty Bethea that I was no longer an employee with the company and for them not to pay the approved benefits. I said how could you terminate someone from employment while they were protected under the FMLA protection and job security until they are released and returned back to work? However it happened to me and I can prove it. After Betty terminated me in the conference room where they have their morning meetings at. She came into my office explaining how she didn't want to terminate me but she was very hurt from the things in which I told Steven Morrison from Kindreds Human Resource Department. about her and her daughter Cecelia . Betty was upset about how I reported that her daughter was paid more than me and didn't have the years and experience as I did. And how she was given the intake position in which I applied for. First before her daughter. And also how she stirred up mess and confusion with staff members getting them into trouble with Betty. And how Cecelia (Ceil) was the only employee that took unauthorized breaks whenever she wanted to when everyone else had to stick to the assigned breaks in which we got daily. Of two breaks and one hour lunch break . But Ceil would go on unassigned breaks with her mother Betty Bethea smoking cigarettes while all the other employees were working. I then said Betty I am on FMLA and that my doctors took me off my feet the day before in which was 4-13-2017 and the purpose of me coming to work on 4-17-2017 was to inform Mellonie Simon in which was my direct Supervisor and one of the Assistant Directors to Betty Bethea and give her the paperwork and to get my purse because I left my purse under my desk the prior day. I showed Betty the paperwork where the doctor took me off my feet the day before in which was the 4-13-2017 and that I was approved for FMLA. Betty looked at me and said that she already knew about me being approved for FMLA and didn't care that I was on FMLA and that she was sticking to his decision of terminating me. I then contacted Steven Morrison in the Human Resources Department and Jessie Howard in which is Betty Bethea Supervisor around 9am and explained to him everything that took place and even the fact of me being on FMLA while being wrongfully terminated. Jessie seemed not interested because it appears that no matter what Betty has done to anyone whether it was right or wrong he and Steven Morrison bagged Betty up because they gave her credit for the Houston office making budget. It seemed to be all about the money. in which Betty had said she makes Jessie's job easy because he's responsible to supervise and monitor all the Branches to ensure that their percentages are meeting their budget. Jessie told me that he would look into it and personally call me back but he never did. However when speaking with Steven Morrison in Human Resources and I pleaded to him my innocence and provided the proof and I also suggested that he speak with Susan Brooks Assistant Administrator to Betty Bethea she saw the proof and even spoke with the care attendant Debra Allen. Steven told me that he would talk to Susan to verify what I am saying is true and if Susan verified everything that he would talk to Jessie Howard and get back with me. When Steven called me back he told me that he spoke with Susan Brooks and Susan verified that everything I told him was the truth. He said However after speaking with Jessie Howard Betty that they both agreed to stick by Betty and her decision to terminate me. I then started sobbing although I am FMLA Steven said yes. As you see not only did Betty wrongfully terminate me she used her power and authority to block me from receiving my approved payments from FMLA. Jessie Howard and Steven Morrison were both oaky with how I was treated poorly and wrongfully terminated. They didn't seem to care that I was a loyal and*

dedicated employee. All they seemed to care about is making Betty happy and didn't want her upset because when she couldn't have her way she would threaten to quit. Because of their behaviour and upholding Betty in her wrong doing so many employees were afraid to come forward about how they were being treated but instead called Human Resources anonymously . In which they had so many complaints against Betty. Steven was forced to come down to speak to the staff but many were afraid to tell their truth. I told my truth and was terminated a few days later. Not only was I wrongly terminated and retaliated against, I was bullied out of my FMLA payments. I am submitting the copies from UNUM in which the FMLA department provides proof to support my statement.

I was informed that in the State of Texas that there is a law called an "at-**will** '' state which means that **employers can terminate** an employee's position for nearly any **reason.** As **I** mentioned to the person that said that to me that the at- will state law didnt apply to discrimination in which I encountered for several years. However the reason in which it was documented from Betty Bethea regarding my termination was not accurate nor the truth or a fact. But the truth prevailed over my innocence in which I was discriminated against for years. I reported this matter to Human Resources twice and it was never addressed. I was unfairly and falsely accused and wrongfully accused of committing fraud. I was accused of (fraud). **Fraud is defined as wrongful or criminal deception intended to result in financial personal gain.** In which I did not do and it was proven. Betty Bethea accused me of doing fraud pointing her fingers at me yelling in front of Susan Brooks, Amber Fojt saying that I paid a care attendant for two weeks while the client was in the Nursing Home. In which I wasn't aware at the time that the client Henry Green was admitted into the Nursing Home effective February the 22nd 2017 because the assigned care attendant Debra Allen was still calling in daily when she was with the client Henry Green's his cell phone once she got there and once she left. However as mentioned on the other document I wasn't aware that client Henry Green was admitted into the Nursing Home until Debra Allen called and left me a voicemail to call her in which I did and that's when she told me that he was in the Nursing Home and would be there permanently.

At that moment I told Debra that she has been calling in everyday and she yes I did. I then stated to Debra that once you were hired you signed a handbook which states if a client goes into the **Hospital, Nursing Home, Rehabilitation, or out of the State, Country, or Region to immediately contact the office.** I reminded Debra that once your client goes into the Nursing Home the State stops paying the agency and starts paying the Nursing Home because they are billed through the same program. Debra stated that she thought that she called and talked to someone in the office but she couldn't remember. I then told Debra that I was going to have to write up a negative bill on all the days she claimed while the consumer Henry Green was in the Nursing Home and that the company was going to take back their money since she didn't actually work. Debra agreed that it was okay because she didn't work anyway that she just visited Henry Green at the Nursing Home and that she just sat there and talked to him. After hanging up with Debra Allen I immediately called my appointed Supervisor Mellonie Simon and told her about the situation. She then told me to write up the negative bills so she can sign it and give it to Betty or Susan to sign to send to the Corporate Office. Mellonie then told me to

*council the care attendant Debra Allen and to write up the incident to have on file that the care attendant was counseled and the explanation of company policy was reiterated to Debra Allen as well. Debra Allen apologized and stated that it wouldn't never happen again.*

*Two weeks later the Company had already recouped their money back from Debra out of her check in which she received I verified it with Corporate payroll and Debra later left the amount of money in which was deducted from her check and the hours on my voicemail. Susan Brook in which the Assistant Director to Betty Bethea spoke directly to the care attendant Debra Allen and Debra Allen told her the same thing she told me how I didn't prior know about the client being admitted into the Nursing Home. She was calling in and out on the client cell phone while he was in the Nursing Home and Debra told Susan how I explained to her once she notified me that it was a violation of company policy after Betty Bethea Accused me of committing fraud in which was proven not true. Susan Brooks tried showing Betty the proof of the negative bills and Betty walked away and said she didn't want to see them. However all This was already resolved in February of 2017. So Betty used a situation against me that was already resolved two months later after my conversation I had with Steven Morrison in Human Resources when I told him about the harassment, bullying,and discrimnatioin and unfairness towards me in which I received from Betty Bethea. Betty made false accusations against me which is categorized and considered defamation of Character. Betty yelled and pointed her hands at me embarrassing me in front of Susan Brooks and Amber Fojt . Susan Brooks I applaud because she stood up for me with the truth but it still wasn't enough. I will never forget her for standing for what was right when no one else did. It was at that moment I learned I didn't; have any true friends. I was so saddened, embarrassed and depressed because of what happened to me. It was so wrong of course.*

*I was defamed and my character was already compromised. I tried explaining to Betty that this happened two months prior and I am the one that found out and addressed it. and handled it already and my appointed Supervisor Mellonie Simon was aware of the situation. Betty called me a liar in front of Susan Brooks and Amber Fojt and refused to hear me out. Again I tried telling Betty that this matter was already addressed and corrected and how the negative bill was done in February. She called me a liar and I told her that either she or Susan signed the negative bill and that her assistant Barbara Johnson had all the copies since February. Of 2017. Betty then called me another liar. She said she went to Barbara and Diane Neal before calling me into the office and Barbara alleged told her that she didn't have any negative bills from me on Henry Green. I spoke to Barbara in which Betty's assistant and told her what Bettty said and Barbara Johnson said that Betty never came into her office and asked her for any negative bills and that she had the copies and how she sent the originals to Corporate to do a negative in February of 2017. Bonnie Porter has mentioned that she has several negative bills even 30 at one time and she had never been warned discipline nor written up or terminated from employment. Also Josephine Jimenez as known as (Josie) will attest that she has paid a patient in the nursing home for over two months after I was terminated and they didn't warn her nor write her up nor terminate her for the negativer bills. The issue on my negative bills on client Henry Green was that my provider kept calling in from the client Henry Green phone and never reported it to the office.So therefore there was no way for me to know that until the attendant Debra Green called in the office and told me. He was staying permanently .Nor did*

*the client report to me that he was in the Nursing Home in which it was a part of his responsibility to do so along with the provider but he never did. After the care attendant reported it to me I called the Nursing Home to get the exact date that Henry Green was admitted into the Nursing Home. As you can see I was singled out and retaliated on and wrongly terminated without a just cause. I was given a verbal reason on why I was being wrongly terminated, and not a written one.One day after I told Betty and Mellonie I was placed on FMLA and bedrest and also Just a few days after I spoke with* **Steven in the Human Resource Department** *about being harassed, and bullied , discriminated on and overlooked for higher positions in which I qualified for.and my belief of the retaliation came from first of all refusing to commit a criminal offense by signing Betty Bethea's deceased ex-husband check in which she received in the mail in 2016. A Couple of years after his death in 2014. And secondly me reporting to Steven in Human Resources about Betty Bethea on how she had been treating me lead to my wrongful termination. Not to mention I received a phone call from Regina Francis who is currently an employee with Girling Community Care (KINDREDS) in which she does the payroll and billing for the respite hours. She told me that the State came into the office on a tip from where an*
employee that was working in the office was paying her boyfriend for two years on clients in which he didn't work because he was incarcerated.Regina stated that once It was found to be true. Betty covered it up with the State because she was very close to the employee. Regina said that Betty told the auditor from Health and Human Service that the Coordinators have no way of knowing who is clocking in and out for an individual because it's not done in front of them. However all Betty did was have the company negative bill all the hours that the employee had paid the incarcerated individual for all the hours that had been billed and paid for over two years or more in which the incarcerated attendant was paid for. But Betty never terminated the person in which she paid the incarcerated attendant in which was her boyfriend. Instead she protected her.
 Regina said that the provider name was Sean Gilbow and said that the Attorney General office Mr. Palaciois was investigating all the fraud accusations reported to him from employees of Kindreds Health Care, the number Regina gave me for Mr. Palacious is 713.540.0816 and Health and Human Services @1800.458.9858 is the Regina gave me her personal number 713.235.0043 if I needed her to testify. Regina stated that Health and Human Services is the one that did the State audit on the incarcerated individual that was being paid for over two years. However Regina said had been talking to Mr. Palacious due to a previous coworker gave her a phone number to confirm the allegations against Betty Bethea about the care attendant having been compensated for over two years while being incarcerated.

 Regina stated she was giving me this information because I wrongfully terminated from talking to Human Resources and treated unfairly. Regina stated Betty terminated me while approved for FMLA and I was innocent and that I was the one to discover the client was in the nursing room and reported to Mellonie did a negative bill and got the money back. And this employee paid her boyfriend for two years and was aware he was incarcerated and she wasn't written up nor terminated for paying her boyfriend for two years while incarcerated. Regina felt that Betty's action towards me was very biased and it seemed personal in her opinion. But other employees came forth and reported it as well. Regina said that shortly after all the negative bills

were done to give back the State in which is Health and Human Services all of their monies in which the incarcerated attendant was paid for over two years. The employee that paid the incarcerated individual in which was her boyfriend.later resigned her job with the company and went to another job. Regina stated that Betty was very upset because the employee had resigned with a very short notice and that Betty felt she was used and betrayed all because she protected her and her job.with the State auditors on that fraudulent billing. All this can be proven.Kindred is aware of this. And Health and Human Services. Now that is what is considered a real example of fraud.Regina Francis stated the reason that she wanted me to have this information is because she knew I was wrongfully terminated off a lie and did wrong and she wanted to help me any way possible.

I remember Betty telling me to go find a job with someone else. Her actions was discrimination based on my race. Betty said I will be here another 10 to 20 years, complaining and whining about the same thing and that I was never going to get a Directors position. She said all this because I keep asking why I am overlooked for promotions and higher positions when she sees that I am an overachiever and how I master every task which was given to me. I told her it seems odd only the Causians employees and her family friend are promoted in higher positions without merit seniority or degrees for those positions but she just put them there. Everyone can vouch that anything Betty asked me to do I would do it as long as it was legal. I was her problem solver when needed. In short, I was subjected to disparate treatment and a hostile work environment based upon illegal factors such as my race. I was discriminated against, retaliated , harassed, overlooked and wrongfully terminated. Since all of these wrongful things happen to me from Betty Betha and the company.


-Deltressa Haverly

# Exhibit B

**STAPLES**

# copy&print

To: ARTURO @EEOC

From: Delvessn

Fax #: 713) 651-4902

Phone #: 832- 752

Date: 5 / 31 / 17

Reply Fax #:

Number of Pages (Including Cover): 5

Urgent ☐    Confidential ☐

MAY 3 1 2017

## We'll do it right the first time — guarantee

Black & white copies • Color copies • Custom printing • Binding • Folding • Wide-format copying • Custom stamps

tha

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)

**1. Personal Information**

Last Name: **Haverly**    First Name: **Deltress**    MI: **Ann**

Street or Mailing Address: **9711 Cedar Bluff Drive** Apt or Unit #:

City: **Hin Ston**    County: **Harris**    State: **TX**    Zip: **77064**

Phone Numbers: Home: **(832) 752-1808**    Work: ( )

Cell: **(832) 752-1808**    Email Address: **barbie 177 @ gmail.com**

Date of Birth: **1-7-71**    Sex: ☐ Male ☑ Female    Do You Have a Disability? ☐ Yes ☐ No

Please answer each of the next three questions. i. Are you Hispanic or Latino? ☐ Yes ☑ No

ii. What is your Race? Please choose all that apply. ☐ American Indian or Alaskan Native   ☐ Asian   ☐ White
☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? **American Indian and Black**

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:

Name: **Ms. Coffey**    Relationship: **Mother**

Address: **9711 Cedar Bluff Drive   Hin Ston**    State: **TX**    Zip Code: **77064**

Home Phone: **(832) 946-2917**    Other Phone: ( n/a )

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☑ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify) _____

Organization Contact Information (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: **Giving Community Care (affiliated with Kindred)**

Address: **6750 W Loop South**    County: **Harris**

City: **Bellaire**    State: **TX** Zip: **77401**    Phone: **(713) 780-1248**

Type of Business: **Home Health**   Job Location if different from Org. Address:    **DC**

Human Resources Director or Owner Name: **Steven Morison**    Phone: **(512) 323-1536**

Number of Employees in the Organization at All Locations: Please Check (✓) One

☐ Fewer Than 15   ☐ 15 - 100   ☐ 101 - 200   ☐ 201 - 500   ☑ More than 500

**3. Your Employment Data** (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☑ No

Date Hired: **1-7-96**    Job Title At Hire: **Care attendant**

Pay Rate When Hired: **$4.00**    Last or Current Pay Rate: **$19.80 unsure of the exact figure**

Job Title at Time of Alleged Discrimination: **Care Coordinator** Date Quit/Discharged: **4-14-17**
**case manager**

Name and Title of Immediate Supervisor: **Mellonie Simon**

If Job Applicant, Date You Applied for Job _____    Job Title Applied For _____

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race ☐ Sex ☐ Age ☐ Disability ☐ National Origin ☐ Religion ☒ Retaliation ☐ Pregnancy ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing    ii. family medical history    iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information?_____

Other reason (basis) for discrimination (Explain): ~I was~ Singled out, Bullied, Slandered Harrassed and Retaliated on

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A. Date: 4/14/17    Action: Discharged by Bettie Faye Bethea (Administr

Name and Title of Person(s) Responsible: Bettie Faye Bethea (Administrator)

B. Date: 4-14-17    Action: _____

Name and Title of Person(s) Responsible Bettie Faye Bethea Administrator

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.

_____

**7. What reason(s) were given to you for the acts you consider discriminatory?** By whom? His or Her Job Title?

_____

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. | | | |
| B. | | | |

Of the persons in the same or similar situation as you, who was treated *worse* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|-----------|--------------------------------------------------------|-----------|------------------------|

A._____

B._____

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|-----------|--------------------------------------------------------|-----------|------------------------|

A._____

B._____

Answer questions 9-12 only if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9. Please check all that apply:
   ☐ Yes, I have a disability
   ☐ I do not have a disability now but I did have one
   ☐ No disability but the organization treats me as if I am disabled

10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

_____

_____

11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?
   ☐ Yes ☐ No
If "Yes," what medication, medical equipment or other assistance do you use?

_____

12. Did you ask your employer for any changes or assistance to do your job because of your disability?
   ☐ Yes ☐ No

If "Yes," when did you ask? _____ How did you ask (verbally or in writing)? _____

Who did you ask? (Provide full name and job title of person)

_____

Describe the changes or assistance that you asked for: _____

_____

How did your employer respond to your request? _____

**13.** Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|-----------|-----------|------------------------|-----------------------------------------------|

A. _____

B. _____

**14.** Have you filed a charge previously on this matter with the EEOC or another agency? ☐ Yes ☒ No

**15.** If you filed a complaint with another agency, provide the name of agency and the date of filing: _____

**16.** Have you sought help about this situation from a union, an attorney, or any other source? ☐ Yes ☒ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?

_____

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

---

**BOX 1** ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

---

**BOX 2** ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

---

_____       5-8-17
**Signature**                                    **Today's Date**

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a)
3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters.
5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

# Exhibit

# C

**Statement Prepared June 8th 2017**

I am filing this statement of discrimination, against me. Deltress A Haverly, by Betty Bethea, my supervisor at Girling Community Care and Kindred March 20,2001 to April 14th 2017,  in deliberate actions to deny me job opportunities, in Leadership positions with Girling Community Care and Kindred Girling Community Care and Kindred's failure to insure that a valued employee was not discriminated against in hiring and advancement within the company. I have previously shared with EEOC  my statement of retaliation and I will use those same pages in the history of discrimination against me. I am requesting you to be my representative with EEOC assisting them on my discrimnation case in which I submitted to them in May of 2017 to help ensure I get a fair response and a thorough investigation to find that my complaint is **validated** and I was **treated unfairly discriminated against, bullied, harassed**, and **retaliated against**. I was approved for Family Leave on 4-13-2017 and once they notified Betty Bethea and Mellonie Simon Betty Bethea terminated me the next day. She did the very same thing to me in 2000 when I was working in the field and was injured at the client's home by pulling my back helping the client from falling on the floor. When she found out I was on  Family Medical leave she called me up to the office and told me that she needed me to work. Once I told her I couldn't work she terminated me. I reached out to the Human Resource Department and Betty Bethea previous Supervisor Wayne Douglas and they overturned her termination and kept me employed. Now  the same thing occurred I was placed on Family Medical Leave and bedrest from my doctors and once Betty Bethea was informed that I was on Family Medical Leave she terminated me the next day after I was already approved for Family Medical Leave but this time when I reached out to our Human Resource Department under new owners Kindreds they was aware (Steve Morrison) Human Resource Director and Betty Bethea new Supervisor Jessie Howard  he allowed the termination to take place with knowing I was on Family Medical Leave. So I was discriminated against for my disability . Betty never liked me out of the office even when I was sick she would call me and tell me I needed you in the office. She didn't care that I was sick and could have died from having 5 percent hemoglobin in my body and had to be admitted for blood transfusions.Betty started harassing me a lot in February of 2017 after I was in a car accident on 2-2-2017

I was hired by Girling Health Care on January 7th 1996. I was transferred from my field duties in 1999 from a former acting Director named Regina and Wayne Douglas due to being injured at a patients home.So after being released from the doctor  they brought me in the office and gave me a desk job per doctor's request. On March 20th 2000, Betty Bethea was hired by Girling Community Care, as my Supervisor, From that date, March 20,2000. The date of the hire of Betty Bethea, I was not offered employment advancement, promotion and I  was passed over

for numerous promotions and leadership roles.  In some cases a member of the Betty Bethea family was hired without fulfilling Girling's guidelines and policies. Stated differently, I was not advanced in employment within Girling and Kindred for 22 years. During all of those years, I received annual job reviews and everyone of them, my reviews were high and showed that I was a great employee.

For 22 years, I received high evaluations and no advancement when I applied. During the same time, Caucasian and Hispanics were hired and promoted from outside the company, many times while Betty Bethea circumvented company rules and guidelines to hire someone that she wanted to  have the job and/ or deny me advance. And finally, Betty Bethea used bogus reasons, not born out of company guidelines or company policies to discharge me from my employment.

With my statement, I am including documentation of some of events that have occurred surrounding the hiring practices of Betty Bethea and the discriminatory treatment she inflicted on me. I have received as a result of the **hostile treatment** by Betty Bethea and GirlingCommunity Care Kindred. Your investigation will reveal more discrimnation that I suffered because of the actions of Betty Bethea and the inaction of Girling Community Care and Kindred.

-Deltressa Haverly

SHEILA JACKSON LEE
18th District, Texas

WASHINGTON OFFICE
2160 Rayburn House Office Building
Washington, DC 20515
(202) 225-3816

DISTRICT OFFICE
1919 Smith Street, Suite 1180
The George "Mickey" Leland Federal Building
Houston, TX 77002
(713) 655-0050

ACRES HOME OFFICE
6719 West Montgomery, Suite 204
Houston, TX 77091
(713) 691-4882

HEIGHTS OFFICE
420 West 19th Street
Houston, TX 77008
(713) 861-4070

FIFTH WARD OFFICE
4300 Lyons Avenue, Suite 200
Houston, TX 77020
(713) 227-7740

# Congress of the United States
## House of Representatives
### Washington, DC 20515

JUDICIARY

SUBCOMMITTEES

HOMELAND SECURITY
SUBCOMMITTEES
RANKING MEMBER
BORDER AND MARITIME SECURITY
TRANSPORTATION SECURITY

CHAIR
DEMOCRATIC CAUCUS

June 18, 2017

Ms. Del'tressa Haverly
2421 Wayne Street
Houston, TX 77026

Dear Ms. Haverly:

Thank you for allowing me to assist with your case. Although I cannot guarantee a particular outcome, I want you to know that we will do our best to help you receive a fair and timely response.

Please find the privacy act release form enclosed. Fill out the privacy act release form and send it back to the office. Once we have the privacy act release form, we can begin to work on your case. Please be aware that the more information you provide to this office, the more diligent we can be to pin point the problem and act accordingly in a timely fashion.

Very truly yours,

Sheila Jackson Lee
Member of Congress

SJL\mm



# Congresswoman Sheila Jackson Lee - 18th Congressional District

| Main Office | Heights Office | Acres Home Office | 5th Ward Office |
|---|---|---|---|
| 1919 Smith Street, #1180 | 420 West 19th Street | 6917 W. Montgomery | 4300 Lyons Avenue |
| Houston, TX 77002 | Houston, TX 77008 | Houston, TX 77019 | Houston, TX 77020 |
| Phone (713) 655-0050 | Phone (713) 861-4070 | Phone (713) 691-4882 | Phone (713) 227-7740 |
| Fax (713) 655-1612 | Fax (713) 861-4323 | Fax (713) 699-8292 | T-Th 9:00a-6:00p |
| M-F 9:00a-6:00p | T-Th 9:00a-6:00p | T-Th 9:00a-6:00p | |

## Privacy Act Release Form

Name: Deltressa Haverly

Mailing Address: P.O. Box 541281   City: HTN   Zip: TX77254

Residential Address: 2421 Wayne Street   City: HTN   Zip: 77026

Home Ph. (713) 672-1796   Cell Ph. 832-752-1308   Work Ph.
832-752-1308

Date of Birth 1-7-71   Email deltressa7@gmail.com

Social Security Number or ID:
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

INS Texas Service Center Receipt (SRC No.) (if applicable)

Agency of Contact:

Alien Registration Number (if applicable)

Veteran's Claim Number (if applicable)
Branch

Tax Year Involved (if applicable)

Nature of Problem (Briefly state how would you like the Congressional Office to assist you on this form.)
*Please do not write "see attached" on this form.* You must explain your request on this form:

Discrimination, Wrongful termination,
Humilation and Bullying

I understand that under the provisions contained in the Privacy Act of 1974, Federal government agencies may not release records without an individual's written consent. I hereby authorize Congresswoman Sheila Jackson Lee and her staff to make the necessary inquiries on my behalf and to obtain all necessary information regarding my request.

Date 8-14-18   Signature

| | |
|---|---|
| **From:** | Deltressa Coffey <deltressa7@gmail.com> |
| **Sent:** | Sunday, January 24, 2021 2:02 AM |
| **To:** | Fedex Kinkos On 249 |
| **Subject:** | [EXTERNAL] Fwd: Janet Dhillion |

Caution! This email originated outside of FedEx. Please do not open attachments or click links from an unknown or suspicious origin.

**From:** Deltressa Coffey <deltressa7@gmail.com>
**Date:** November 13, 2017at 11:26AM
**To:** info@eeoc.gov
**Subject: Janet Dhillion**

How can contact I reach Janet Dhillion Chair
I need to discuss with you about my discrimination complaint in which I filled with the EEOC Houston Division. It's hard getting back in touch with anyone regarding my case. I need the update on my case. Mr. Irving said to wait to hear back from the court by mail and I haven't heard from anyone. I file my discrimination complain on 5/8/2017. Please assist me with this matter. I thank you in advance!

-Deltressa Haverly

Delete   Archive   Junk   Sweep   Move to   Categorize   Snooze   Undo

> Favorites

Folders
Inbox   272
Drafts   61
Sent Items
Deleted Items   240
Junk Email   123
Archive
Notes
Clutter   802
Alux File   1
Conversation History
RSS Feeds
Saved Info
New folder
In-Place Archive -The UPS S...
Groups

Inbox ★    Filter

**Deltressa Coffey**   3:04 PM
Diagnostic and Pain (EM...
CAUTION! This email originated from ou...
Diagnostic and ...

**Deltressa Coffey**   3:04 PM
Revised Form 5 for Deltre...
CAUTION! This email originated from ou...
Revised Form 5 ...

**Deltressa Coffey**   3:04 PM
Revised Form 5 for Deltre...
CAUTION! This email originated from ou...
Revised Form 5 ...

**D Coffey**
Deltress Haverly   3:03 PM
CAUTION! This email originated from ou...

**D Coffey**
Requesting copies of my ...   3:02 PM
CAUTION! This email originated from ou...

**D Coffey**
Discrimination Case   3:02 PM
CAUTION! This email originated from ou...

**samuel.carr@aaginternational.us**   3:02 PM
Photo from Pak Cargo LLC
CAUTION! This email originated from ou...

**D Coffey**
Requesting copies of my ...   3:02 PM
CAUTION! This email originated from ou...

**D Coffey**
Requesting copies of my ...   3:02 PM
CAUTION! This email originated from ou...

**samuel.carr@aaginternational.us**   3:01 PM
Photo from Pak Cargo LLC
CAUTION! This email originated from ou...

**Deltressa Coffey**
your files in 2017   3:00 PM
CAUTION! This email originated from ou...

**Deltressa Coffey**   2:59 PM
> Record Request   (2)
CAUTION! This email originated from ou...
161 for Deltress...

## Discrimination Case

**D Coffey** <deltressa@icloud.com>
Tue 1/19/2021 3:02 PM
To: The UPS Store #2286

CAUTION! This email originated from outside of the organization. Please do not open attachments or click links from an unknown or suspicious origin

[ Thank you! ]   [ Received, thank you. ]   [ Got it, thanks! ]

Are the suggestions above helpful?   Yes   No

Reply   Forward



**From:** Deltressa Coffey <deltressa7@gmail.com>
**Date:** December 11, 2017 at 3:05PM CDT
**To:** sheila.Jackson.lee@mail.house.gov
**Subject: Fwd: Discrimination Case**

*Supporting Document Where I Reached Out To Sheila Jackson Lee On 12-11-17 Regarding my Discrimination Complaint I filed 5-8-17*

**From:** Deltressa Coffey <deltressa7@gmail.com>
**Date:** December 11, 2017 at 3:05PM EDT
**To:** sheila.jackson.lee@mail.house.gov
**Cc:** Deltressa Coffey <deltressa7@gmail.com>
**Subject: Discrimination Case**

My name is Deltress A. Haverly. I was wondering could you do a follow up EROC regarding my discrimination complaint. When I spoke with the investigator Mr. Irving in which was appointed to me in June of 2017. The last time we spoke he spoke that he was placing my case in the court and for me to wait to hear from them by mail. But it's December and I still haven't heard from them. I have tried calling EEOC on several occasions to speak to me. Irving for a update be I haven't heard back grim him nor EEOC nor the court. I just need to see if they have me a court date yet. Also and I still haven't been paid for my benefits and I was approved on FMLA. As I prior mentioned. I was discriminated on retailed on bullied harrased and denied accommodations with my disability. I just need to know of there is a court date yet because I haven't received anything in the mail. Please let me know.~

Delete   Archive   Junk ∨   Sweep   Move to ∨   Categorize ∨   Snooze ∨   Undo

| | | |
|---|---|---|
| **Favorites** | | **Inbox** ★ | Filter ∨ |

AIP (complete)....

> **Folders**

Inbox 272

Drafts 61

Sent Items

Deleted Items 240

Junk Email 123

Archive

Notes

Clutter 802

Alux File 1

Conversation History

RSS Feeds

Saved Info

New folder

> In-Place Archive -The UPS S...

> Groups

Deltressa Coffey
Diagnostic and Pain (EM... 3:04 PM
CAUTION! This email originated from ou...

Diagnostic and ...

Deltressa Coffey
Revised Form 5 for Deltre... 3:04 PM
CAUTION! This email originated from ou...

Revised Form 5 ...

Deltressa Coffey
Revised Form 5 for Deltre... 3:04 PM
CAUTION! This email originated from ou...

Revised Form 5 ...

D Coffey
Deltress Haverly 3:03 PM
CAUTION! This email originated from ou...

D Coffey
Requesting copies of my ... 3:02 PM
CAUTION! This email originated from ou...

D Coffey
Discrimination Case 3:02 PM
CAUTION! This email originated from ou...

samuel.carr@aaginternational.us
Photo from Pak Cargo LLC 3:02 PM
CAUTION! This email originated from ou...

D Coffey
Requesting copies of my ... 3:02 PM
CAUTION! This email originated from ou...

D Coffey
Requesting copies of my ... 3:02 PM
CAUTION! This email originated from ou...

samuel.carr@aaginternational.us
Photo from Pak Cargo LLC 3:01 PM
CAUTION! This email originated from ou...

Deltressa Coffey
your files in 2017 3:00 PM
CAUTION! This email originated from ou...

Deltressa Coffey
> Record Request (2) 2:59 PM
CAUTION! This email originated from ou...

161 for Deltress...

---

**Deltress Haverly**

D Coffey <deltressa@icloud.com>
Tue 1/19/2021 3:03 PM
To: The UPS Store #2286

CAUTION! This email originated from outside of the organization. Please do not open attachments or click links from an unknown or suspicious origin

Sent from my iPhone

Sent from my iPhone

Begin forwarded message:

Thank you!    Received, thank you.    Got it, thanks!

Are the suggestions above helpful?  Yes   No

Reply    Forward



**From:** Deltressa Coffey <deltressa7@gmail.com>
**Date:** July 28, 2020 at 10:52:27 PM CDT
**To:** YE Hannah <hannah.ye@eeoc.gov>
**Subject:** Re: Deltress Haverly

Acknowledged!
Thanks for sending. How can I get a copy of all the paperwork and supporting evidence for my EEOC case in which I Submitted in person at the Houston Branch in the Mickey Leland Federal Building. And also on make the editing on my charge. How do you recommend I send it back to you. By email or fax? thank you in advance for all your help
-Deltressa Haverly

Ms. Deltressa Haverly,

Please see attached Charging of Discrimination form, please review, sign date and submit it back to me.

You can change or edit the content if you need.

Also the two PDF doc are the documents you submitted in 2017.

Hannah Ye
Investigator Support Assistant
U.S. Equal Employment
Opportunity Commssion
1919 Smith St 6th Fl.
Houston, TX 77002
Tele: (346)327-7723
Fax: (713)651-4902

## Fwd: Privacy Waiver Form

DC  **Deltressa Coffey** <deltressa7@gmail.com>
Tue 1/19/2021 3:09 PM
To: The UPS Store #2286

👍 ↩ ↰ → ⋯

CAUTION! This email originated from outside of the organization. Please do not open attachments or click links from an unknown or suspicious origin

Sent from my iPhone

Begin forwarded message:

**From:** Deltressa Coffey <deltressa7@gmail.com>
**Date:** August 14, 2018 at 4:09:00 PM CDT
**To:** "Gardner, Darnell" <Darnell.Gardner@mail.house.gov>
**Subject: Re: Privacy Waiver Form**

Thanks. I received your email

On Aug 14, 2018, at 4:00 PM, Gardner, Darnell <Darnell.Gardner@mail.house.gov> wrote:

Darnell Gardner
Congressional Staffer
Office of Congresswoman Sheila Jackson Lee
18th Congressional District of Texas
1919 Smith Street, Ste. 1180
Houston, TX 77002
Office: (713) 655.0050
Fax: (713) 655.1612
Cell: (832) 374.6216

<0440_001.pdf>

Reply    Forward

*Supporting Document where I was in contact with Congress woman Sheila Jackson Darnell Gardner updates on my case*

≡ New message

> Favorites

∨ Folders

📥 Inbox    272
📝 Drafts    61
➤ Sent Items
🗑 Deleted Items    240
⊘ Junk Email    123
🗀 Archive
🗀 Notes
   Clutter    802
   Alux File    1
   Conversation History
   RSS Feeds
   Saved Info
   New folder

> In-Place Archive -The UPS S...

> Groups

🗑 Delete   🗄 Archive   ⊘ Junk ∨   🧹 Sweep   ▱ Move to ∨   ⊘ Categorize ∨   🕐 Snooze ∨   ↶ Undo

⊘ Inbox ★      Filter ∨

Deltressa Coffey   📎
Diagnostic and Pain (EM...   3:04 PM
CAUTION! This email originated from ou...
   Diagnostic and ...

Deltressa Coffey   📎
Revised Form 5 for Deltre...   3:04 PM
CAUTION! This email originated from ou...
   Revised Form 5 ...

Deltressa Coffey   📎
Revised Form 5 for Deltre...   3:04 PM
CAUTION! This email originated from ou...
   Revised Form 5 ...

D Coffey
Deltress Haverly   3:03 PM
CAUTION! This email originated from ou...

D Coffey
Requesting copies of my ...   3:02 PM
CAUTION! This email originated from ou...

D Coffey
Discrimination Case   3:02 PM
CAUTION! This email originated from ou...

samuel.carr@aaginternational.us
Photo from Pak Cargo LLC   3:02 PM
CAUTION! This email originated from ou...
[black redaction]

D Coffey
Requesting copies of my ...   3:02 PM
CAUTION! This email originated from M...

D Coffey
Requesting copies of my ...   3:02 PM
CAUTION! This email originated from ou...

samuel.carr@aaginternational.us   📎
Photo from Pak Cargo LLC   3:01 PM
CAUTION! This email originated from M...
[black redaction]

Deltressa Coffey
your files in 2017   3:00 PM
CAUTION! This email originated from ou...

Deltressa Coffey   📎
> Record Request   (2)   2:59 PM
CAUTION! This email originated from ou...
   161 for Deltress... ⋮

## Requesting copies of my files



DC   D Coffey <deltressa@icloud.com>
Tue 1/19/2021 3:02 PM
To: The UPS Store #2286

CAUTION! This email originated from outside of the
organization. Please do not open attachments or click links
from an unknown or suspicious origin

Sent from my iPhone

Sent from my iPhone

Begin forwarded message:

[ Thank you! ]   [ Received, thank you. ]   [ Got it, thanks! ]

💬 Are the suggestions above helpful?   Yes   No

↩ Reply    → Forward

**From:** Deltressa Coffey <deltressa7@gmail.com>
**Date:** June 30, 2020 at 8:19:14 PM CDT
**To:** James Fowler <James.fowler@twc.state.tx.us>
**Subject: Requesting copies of my files**

Mr. Fowler,
This is the emailed in which I sent her. I will get all
documents I have scanned and forward to you. So
can send the to person you mentioned you would
it to. I pray she resounds within the next couple of
Again thanks for all your help !
-Deltressa Haverly

**From:** D Coffey <deltressa@icloud.com>
**Date:** June 30, 2020 at 8:15:32 PM CDT
**To:** Foia@eoc.gov
**Subject: Requesting copies of my files**

Attn: Ms. Ngyuen Coordinator over fires, or
whomever is in charge,
My name is Deltressa Haverly. I am
requesting a copy of my files in which I filed
a EEOC case back in 2017. I was impacted
by hurricane Harvey and I lost my copies
due to water damaged. I have left you
several messages and I never received a
returned phone call back. My deadline is
approached and time is not on my side Im
praying the courts and all handling my case
will spare me sometime since everything is
closed because of the pandemic in our City
of Houston. However I was told you all was
opened. Its imperative that I get a copy of

| | |
|---|---|
| **From:** | D Coffey <deltressa@icloud.com> |
| **Sent:** | Wednesday, January 27, 2021 10:43 AM |
| **To:** | Fedex Kinkos On 249 |
| **Subject:** | [EXTERNAL] Fwd: Requesting copies of my files |

---

Caution! This email originated outside of FedEx. Please do not open attachments or click links from an unknown or suspicious origin.

---

**From:** ULONDA FORNEY
<ULONDA.FORNEY@EEOC.GOV>
**Date:** July 16, 2020 at 6:24:55 PM CDT
**To:** GABRIEL CERVANTES
<GABRIEL.CERVANTES@EEOC.GOV>
**Cc:** "deltressa7@gmail.com" <deltressa7@gmail.com>
**Subject: FW: Requesting copies of my files**

Gabriel,

When you get a moment can you review the following information. PCP states that she faxed the information that was needed to perfect her charge, but since then, have not heard from anyone. IMS shows only an inquiry by Lewis Wilkerson in June 2017.

PCP is requesting copies of the file she thought was still open and being investigated. The only document in IMS is form 283.

I advised PCP that her inquiry was not perfected to a charge and that there is no evidence in the records that would suggest any documents were received after her Intake Interview with Mr. Wilkerson.

I informed PCP that I would refer her to our Intake supervisor and that you would respond to her directly. If you have questions or if this should be directed to someone else, please advise.

Respectfully,

-----Original Message-----
From: HOUSFOIA

1

Sent: Thursday, July 16, 2020 4:00 PM
To: deltressa@icloud.com; deltressa7@gmail.com
Subject: RE: Requesting copies of my files

Hello Ms. Haverly,

I am responding to your request for your file
information. The information you provided does not
reflect a charge filed with EEOC. Please provide
information where a charge was filed and not just an
inquiry.

If you have questions you may contact me.

Respectfully,

Ulonda Forney, Executive Secretary
EEOC- Houston District Office
1919 Smith Street, 7th Floor
Houston, Texas 77002

Direct: (346) 327- 7732
Fax:  (713) 651-4902


-----Original Message-----
From: FREEDOM OF INFORMATION ACT
Sent: Wednesday, July 01, 2020 10:04 AM
To: HOUSFOIA <housfoia@eeoc.gov>
Subject: FW: Requesting copies of my files

Please see email below, not sure if this is for your office.

Ronald L. Barnes, III.
Government Information Assistant
U.S. Equal Employment Opportunity Commission, HQ
Office of Legal Counsel, FOIA Division


-----Original Message-----
From: D Coffey <deltressa@icloud.com>
Sent: Wednesday, July 01, 2020 10:45 AM
To: FREEDOM OF INFORMATION ACT <foia@eeoc.gov>
Cc: Deltressa Coffey <deltressa7@gmail.com>
Subject: Requesting copies of my files

Attn: Ms. Ngyuen Coordinator over fires, or whomever
is in charge, My name is Deltressa Haverly. I am
requesting a copy of my files in which I filed a EEOC case
back in 2017. I was impacted by hurricane Harvey and I
lost my copies due to water damaged. I have left you

2

several messages and I never received a returned phone call back. My deadline is approached and time is not on my side Im praying the courts and all handling my case will spare me sometime since everything is closed because of the pandemic in our City of Houston. However I was told you all was opened. Its imperative that I get a copy of my files. I don't have my file number because it was included in my documents that was destroyed by water. You can locate my file by my name in which is Deltressa Haverly. I filed in April of 2017. Company was under Kindreds or Girling Health Care. My contact information is 832.752.1308. Or email address deltressa@gmail.com my mailing address is :
PO Box 541281
Houston Texas 77254
Please reply to this message letting me know if and when you will send my files. I thank you in advance !
-Deltressa Haverly

# Exhibit

# D

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 846-2017-21682 |

**Texas Workforce Commission Civil Rights Division** and EEOC

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Deltress A. Haverly** | **(832) 752-1308** | **1971** |

| Street Address | City, State and ZIP Code |
|---|---|
| **9711 Cedar Bluff Dr, Houston, TX 77064** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **GIRLING COMMUNITY CARE** | **500 or More** | **(713) 780-1248** |

| Street Address | City, State and ZIP Code |
|---|---|
| **6750 West Loop South #500, Bellaire, TX 77401** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN

☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 04-17-2017 | 04-17-2017 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**I was employed by the above employer from 1/7/1996 until 4/17/2017 when I was terminated. My position was Care Coordinator Supervisor/Floater/On Call Supervisor.**

**I was subjected to harassment and overlooked for promotion by Administrator Bettie Bethea (White). I have worked for the employer for 20 plus years but overlooked for promotion. White people were hired to higher position, such as Cecilia Siecers (white) who is daughter of Bethea and Amber (White). I complained to Human Resources Officer Steven Morrison (White) about the harassment and overlook of promotion by Bettie Bethea and a few days later, I was retaliated and fired. Susan Brooks (White) and Barbara Johnson (White) were also being treated better.**

**I believe that I have been discriminated due to my race (Black) and retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 7-30-20 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date — Charging Party Signature | |

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Deltress A. Haverly<br>9711 Cedar Bluff Dr<br>Houston, TX 77064 | From: Houston District Office<br>Mickey Leland Building<br>1919 Smith Street, 7th Floor<br>Houston, TX 77002 |
|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2017-21682 | **Hannah Ye,**<br>**Investigator Support Asst** | (346) 327-7723 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☒ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Gabriel Cervantes
Digitally signed by Gabriel Cervantes
DN: cn=Gabriel Cervantes, o=EEOC, ou,
email=gabriel.cervantes3@eeoc.gov, c=US
Date: 2020.09.14 11:52:38 -05'00'

9/14/2020

Enclosures(s)     for     **Rayford O. Irvin,**
**District Director**     *(Date Mailed)*

cc:

**GIRLING COMMUNITY CARE**
**6750 West Loop South #500**
**Bellaire, TX 77401**

**Texas Workforce Commission-Civil Rights Division**
**101 East 15th Street Room 144T**
**Austin, TX 78778**

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2.   **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### INTAKE QUESTIONNAIRE

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)

**1.** Personal Information

Last Name: Haverly  First Name: Deltress  MI: Ann

Street or Mailing Address: 9711 Cedar Bluff Drive  Apt or Unit #:

City: Houston  County: Harris  State: TX  Zip: 77064

Phone Numbers: Home: (832) 752-1308  Work: ( N/A

Cell: (832) 752-1308  Email Address: barbie.f17@gmail.com

Date of Birth: 4-7-71  Sex: ☐ Male ☒ Female  Do You Have a Disability? ☒ Yes ☐ No  nerve damage on (R) side and two bulk desk in lower back Family History

Please answer each of the next three questions: i. Are you Hispanic or Latino? ☐ Yes ☒ No

ii. What is your Race? Please choose all that apply. ☐ American Indian or Alaskan Native ☐ Asian ☐ White ☒ Black or African American ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? Multi Race - Indian Black and Spanish decedent

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:

Name: MS. M. Coffey  Relationship: Mother

Address: 9711 Cedar Bluff Drive Houston  State: TX  Zip Code: 77064

Home Phone: 281 807 1340  Other Phone: (

**2.** I believe that I was discriminated against by the following organization(s): (Check those that apply)

☒ Employer ☐ Union ☐ Employment Agency ☒ Other (Please Specify) and Director Administrator Betty F Betren

Organization Contact Information (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: Girling Community Care Kindred's

Address: 6750 W Loop South  County: Harris County

City: Bellaire  State: TX  Zip: 77401  Phone: (713) 780-1248

Type of Business: Home Health Provider service for the Elderly and Disabled  Job Location if different from Org. Address:

Human Resources Director or Owner Name: Steven Morrison  Phone: 512-323-1536

Number of Employees in the Organization at All Locations: Please Check (✓) One

☐ Fewer Than 15 ☐ 15 - 100 ☐ 101 - 200 ☐ 201 - 500 ☒ More than 500

**3.** Your Employment Data (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☒ No

Date Hired: January 1996  Job Title At Hire: Care Attendant

Pay Rate When Hired: $4.00 an hour  Last or Current Pay Rate: $19.80 or close to it

Job Title at Time of Alleged Discrimination: Care Coordinator  Date Quit/Discharged: 4-14-17

Name and Title of Immediate Supervisor: Mellonie Simon

If Job Applicant, Date You Applied for Job ______ Job Title Applied For ______

4. What is the reason (basis) for your claim of employment discrimination?

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☒ Race ☐ Sex ☐ Age ☒ Disability ☐ National Origin ☐ Religion ☒ Retaliation ☐ Pregnancy ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing ii. family medical history iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: Overlooking me for many years for Higher Positions. But Giving Them to Her family and friends All Caucasian

If you checked genetic information, how did the employer obtain the genetic information?

---

Other reason (basis) for discrimination (Explain): Wrongfully terminating While on Approved FMLA. And Refused To reasonable Accommodate me with my Disability when ask

5. What happened to you that you believe was discriminatory? Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)

A. Date: 4/14/17 Action: Wrongly terminate me While on Approved FMLA. In which WAS approved 4-13-17 (DIRECTOR)
Name and Title of Person(s) Responsible: Betty Faye BeThea (Administrator)

B. Date: 4-14-17 Action: See attached communication for More details on The discrimination Complaint.
Name and Title of Person(s) Responsible: Betty Faye Bethea - Director and Administrator

6. Why do you believe these actions were discriminatory? Please attach additional pages if needed.
Because I WAS on approved FMLA. Approved on 4-13-17 She Knew it and terminated me anyway Because of my Disability

7. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?
Violation of Company Policy In which wasn't true Accused me of Knowingly Paying A PCA. 2 Weeks without merit.

8. Describe who was in the same or similar situation as you and how they were treated. For example, who else applied for the same job you did; who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated better than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. Jason Watley (B) Male | — | File Clerk b/up receptionist | terminated him wrongly and Accused him of being Rude To a Client Apprentices Proven it was him the |
| Diane (B) Female | | | terminated her wrongly because Betty grandson called her a nigga She reported and was terminated Heard from mental illness |
| B. | | | |
| 1) Ruby Garcia (Hispanic) Female | | | Was terminated and Accused of wrongly Paying PCA And the Family Said it wasn't true But She terminated for reporting Them Both to HR |

Of the persons in the same or similar situation as you, who was treated *worse than* you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. | | | |
| B. | | | |

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|

A. JASON WATLEY — BLACK MALE. Suffers from mental Health
He assisted on the Phones But was a file Clerk. Terminated
accused on being rude... when the Caller Said. It was A female rep

B. Ruby Garcia Hispanic — Terminated 2 weeks later
from Complaining to Human Resource about How Betty
wrongly had me written up on something I didn't do while dir

Answer questions 9-12 only if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have **more than one disability**. Please add additional pages if needed.

9. Please check all that apply:
☒ Yes, I have a disability
☒ I do not have a disability now but I did have one
☐ No disability but the organization treats me as if I am disabled

10. What is the disability that you believe is the reason for the adverse action taken against you? **Does this disability prevent or limit you from doing anything?** (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.)

Heavy Vaginal Bleeding from fibroid and I was prior
Hit while across the street by mobile automobile and
It caused me nerve Damage on my (R) side and
11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?
☒ Yes ☐ No
If "Yes," what medication, medical equipment or other assistance do you use?
Pain medication — approved by Physician Tylenol's
Hydrocodone. And to have a Cane to help with
Ambulation and mobility

12. Did you ask your employer for any changes or assistance to do your job because of your disability?
☒ Yes ☐ No

If "Yes," when did you ask? 12-16 and 20 of 2017 How did you ask (verbally or in writing)? Verbally
November of 2016 And February of 2017
Who did you ask? (Provide full name and job title of person)
BETTY FAYE Bethea. Brianna Melendion Was my supervisor But Betty
Had to be the one to give approv
Describe the changes or assistance that you asked for: I asked BETTY Bethea could I
temporarily work from Home Because of the Heavy
Bleeding And It was hard for me to Concentrate
and Ambulate from one area to the next
How did your employer respond to your request?
Employer refused And told me That She needed
me in the Office And that IF I could do The job
That She would Hire some one That could. But She Allowed

**13.** Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|---|---|---|---|

A. Susan Brooks - Assistant Director - She will tell the truth. She knows About the termination and the truth she was there.

B. Misty Garcia-Smith- Payroll clerk- She will tell how Betty Kept Asking her To find Something on me in my case load. To help terminate me. She said Betty asked repet

**14.** Have you filed a charge previously on this matter with the EEOC or another agency? ☐ Yes ☒ No

**15.** If you filed a complaint with another agency, provide the name of agency and the date of filing:

N/A

**16.** Have you sought help about this situation from a union, an attorney, or any other source? ☐ Yes ☒ No
Provide name of organization, name of person you spoke with and date of contact, Results, if any?

I Cant Afford a attorney That's white I file my Discrimination Complaint With EEOC To Investigate With their Lawyers

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

**BOX 1** ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

**BOX 2** ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_DELTRESSA Harvey_
Signature

5-8-17
Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a)
3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

4

846-2017-21682

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT).

**1. Personal Information**

Last Name: Hauerr  First Name: Belinea  MI: Ann

Street or Mailing Address: 9211 Cedar Bluff Drive Apt. or Unit #: ____

City: Manassas  County: Harris  State: TX  Zip: 77064

Phone Numbers: Home: (832) 752-1508  Work: ( )

Cell: (832) 752-1508  Email Address: Belinea 171 @ gmail.com

Date of Birth: 1-7-71  Sex: ☐ Male ☑ Female  Do You Have a Disability? ☐ Yes ☐ No

Please answer each of the next three questions.

i. Are you Hispanic or Latino?  ☐ Yes ☑ No

ii. What is your Race? Please choose all that apply.  ☐ White  ☐ Black or African American  ☐ American Indian or Alaska Native  ☐ Asian  ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? American Indian and Black

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:

Name: Ms. Carey  Relationship: Mother

Address: 9211 Cedar Bluff Drive  State: TX  Zip Code: 77064

Home Phone: (832) 646-3411  Other Phone: N/A

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☑ Employer  ☐ Union  ☐ Employment Agency  ☐ Other (Please Specify)

Organization Contact Information (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported). If more than one employer is involved, attach additional sheets.

Organization Name: (City & County Community Care Affiliated with Kindred)

Address: 6250 Westpark Drive  County: Harris

City: Bellaire  State: TX  Zip: 77401  Phone: (713) 780-1348

Type of Business: Home Health

Job Location if different from Org. Address: ____

Human Resources Director or Owner Name: Steven Morrison  Phone: (713) 829-1989 or (713) 829-1938

Number of Employees in the Organization at All Locations: Please Check (✓) One:
☐ Fewer Than 15  ☐ 15 - 100  ☐ 101 - 200  ☐ 201 - 500  ☑ More than 500

Phone: (713) 722-1936

**3. Your Employment Data** (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☑ No

Date Hired: 1-7-16  Job Title At Hire: Care Coordinator

Pay Rate When Hired: $14.00  Last or Current Pay Rate: $14.00 unsure of the rate

Job Title at Time of Alleged Discrimination: Case Coordinator (quit/displaced)

Name and Title of Immediate Supervisor: Mel Dice  Stacy

If Job Applicant, Date You Applied for Job ____  Job Title Applied For ____

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race ☒ Sex ☐ Age ☐ Disability ☐ National Origin ☐ Religion ☒ Retaliation ☐ Pregnancy ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing   ii. family medical history   iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information? _____

Other reason (basis) for discrimination (Explain): I was Singled out, Bullied, Slandered Harrassed and Retaliated on

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A. Date: 4/14/17   Action: Discharged by Bettie Faye Bethea (Administra

Name and Title of Person(s) Responsible: Bettie Faye Bethea ( Administrator)

B. Date: 4-14-17   Action: _____

Name and Title of Person(s) Responsible: Bettie Faye Betheal Administrator

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.

_____

_____

**7. What reason(s) were given to you for the acts you consider discriminatory?** By whom? His or Her Job Title?

_____

_____

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person) and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. | | | |
| | | | |
| B. | | | |
| | | | |

Of the persons in the same or similar situation as you, who was treated *worse* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|

A. _____

_____

B. _____

_____


Of the persons in the same or similar situation as you, who was treated *same* as you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|

A. _____

_____

B. _____

_____


Answer questions 9-12 only if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9. Please check all that apply:
   ☐ Yes, I have a disability
   ☐ I do not have a disability now but I did have one
   ☐ No disability but the organization treats me as if I am disabled

10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

_____

_____

11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?
   ☐ Yes ☐ No
If "Yes," what medication, medical equipment or other assistance do you use? _____

_____

12. Did you ask your employer for any changes or assistance to do your job because of your disability?
   ☐ Yes ☐ No
If "Yes," when did you ask? _____ How did you ask (verbally or in writing)? _____

Who did you ask? (Provide full name and job title of person) _____

Describe the changes or assistance that you asked for: _____

_____

How did your employer respond to your request? _____

_____

13. Are there any witnesses to the alleged discriminatory incident(s)? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|---|---|---|---|

A.

B.

14. Have you filed a charge previously on this matter with the EEOC or another agency? ☐ Yes ☒ No

15. If you filed a complaint with another agency, provide the name of agency and the date of filing.

16. Have you sought help about this situation from a union, an attorney, or any other source? ☐ Yes ☒ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

BOX 1 ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

BOX 2 ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

Signature [signature]                    Today's Date   5-8-17

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:

1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08), 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a).

3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

4

November 2009

My name is Deltress a. Haverly I filed a discrimination charge with EEOC on 5-8-2017 against Girling Community Care (Kindreds) and Betty Faye Bethea for discrimnation of my race and disability. I was bullied, harassed, retaliated on and overlooked for promotions and higher positions. Mr. Wilkerson with EEOC was assigned to me as my investigator and he told me when we spoke in June of 2017 that he had everything that he needed except the proof that I made contact with Girling Community Care **(Kindreds)** Human Resource Department. I told him yes I had it that I would have to go through my items that's in the trunk of my car. He said okay and he gave me a fax number to fax the items to. Mr. Wilkerson told me that he was going to put my case in State Court but it will probably take a while but wait to hear from them by mail. However after a year went by I reached out to EEOC but no one ever called me back. Then another went by and I said to myself I should have heard from someone by now and still keep calling and leaving messages and no returned calls. I have been under the doctors care since 2017 to present. So finally I got very concerned because I didn't want to miss my chance in court to share how wrongly I was treated in terminating me. So finally I kept calling EEOC downtown division and then I found a 1800 number as well. They tried everything they could to help me but they were limited because I didn;t have my change number so it was hard for them to find me in their system. So i reached out to the Governor's Office last year and no one contacted me back so finally I reached out to the Governor's office at the beginning of the year begging in dire need for help and I explained to the Governor's office how I filed a claim with EEOC in May of 2017 and I was told that I would be contacted by the State court. At that point a couple of weeks later after getting in touch with the Governor's office I received a voicemail from James Tyler he @1512.420.7342 said that the Governor's office reached out to him to help me with my situation with EEOC. How I filed my case in 2017 and how I was told that the state court was going to contact me and how the years were passing and that I didn't want to miss out on the statute of limitation of my case.

I explained to Mr. Tyler how long I had been reaching out to EEOC to check the statues of my case but no one would call me back and I explained to him how I left numerous messages and no call back. So Mr. Tyler gave me an email address to contact them and to request my records and the status of my charge. So a few weeks later I received an email from a representative of EEOC saying she was working remotely from home. I explain to her my situation and the struggles and challenges I had in trying making contact with someone regarding my case. She asked me for my charge number. I told her I didn't know it because I lost a lot of my paperwork as a Harvey victim due to high water in the house I was once living at the time. Then she asked me the name of the company and date and my full name then she found me in the system. She told me that the reason why a representative probably didn't return my calls or getting touch with me is because Mr. Wilkerson put in the system that I changed my mind on the charge so she said a charge was never filed. I was very upset and sad because I never changed my mind on the charge. Matter of fact I was waiting on the State court to contact me like Mr. Wilkerson told me. I told the representative that not only was it not true after Mr. Wilkerson told me that the State Court was going to contact me and how it may take a while. I was advised by retired judge Fred Ashmead to write CongresswomanSheila Jackson Lee to be my representative in my case

with EEOC. I wrote her June the 7th 2017 and she wrote me back agreeing to br my representative on my case. She then enclosed a document for me to sign that she was my representative to EEOC. And I explained to her that if I had told Mr. Wilkerson that I change my mind about the charge. Why would I reach out to Sheila Jackson Lee to be my representative for my EEOC case.The EEOC representative told me that she was going to reach out to the head supervisor name Gabriel Cervantes and explain to him the situation and that he would be contacting me. And she apologized for what I had been through. A few days later I received a voice mail from Gabriel Cervantes and I called him back and explained to him what took place. He explained to me the same thing the other representative said about Mr. Wilkerson put in the notes that I changed my mind on filing the charge against my former employer and that's why no one ever got back to me. I told Gabriel Cervantes that Mr. Wilkerson made a mistake and documented the wrong notes on my file and that he maybe was looking at the wrong file while entering his notes.I told Gabriel Cervantes that since they calls are recorded for quality and approved purposes for him to review that call with me and Mr. Wilkerson and that he would see that the conversation that Mr. Wilkerson and I didn't reflect nor matched the notes that he put in my file. So Gabriel Cervantes said that because of the time that he couldn't do an investigation but he could move forward with the charge and get me in court with the right to sue if I wanted to do so. I told Mr, Gabriel Cervantes that I felt that was so unfair to me because it wasn't my fault that I t was Mr. Wilkerson fault. So he said he understood and told me since I agreed to to move forward with the charge in which I said from the very beginning in June of 2017 to Mr. Wilkerson said that he misled me by having me waiting on the State court to contact me in which they never did because he made the error and put in the system that I changed my mind on the charge in which I did not. Mr. Cervantes told me that Hannah would give me a call and if I didn't hear from her in a few days to call him back. Hannah called me and took my statement again and submitted everything to Gabriel Cervantes to review so that he could submit the charge. Hannah said I would have to wait to hear back from Gabriel Cervantes and I did. I received an email on 9-14-20 with the right to sue giving me 90 days to file a suit. Gabriel said if I didn't file a lawsuit within the 90 days I can never file suit against the company again.See my documentation file where I faxed Mr. Wilkerson 10 pages including a cover sheet with the proof of my communication with the Human Resource Departments of Girling Community Care (Kindreds) and the request to Congresswoman Sheila Jacksom Lee and her reply back to me agreeing to be my representative with EEOC. After reviewing you will see I never requested to drop the charge against my former employer

-Deltressa Haverly-

# Exhibit

# E

Unum
The Benefits Center
PO Box 100158
Columbia, SC 29202-3158
Phone: 877-217-5497
Fax: 1-800-447-2498
www.unum.com



April 24, 2017

DELTRESS HAVERLY
9711 CEDAR BLUFF DRIVE
HOUSTON, TX 77064

RE:     Haverly, Deltress
        Claim Number:              12815831
        Policy Number:             469967
        Unum Life Insurance Company of America

Dear Ms. Haverly:

We are writing about the status of your Short Term Disability claim. You have my personal
commitment to provide you with responsive and courteous service.

**Information About Your Disability Claim**

- Your last day worked was April 13, 2017.
- We have determined your disability date to be April 13, 2017 the date your doctor advised
  you to stop working.
- The plan provided by your employer states benefits are not payable for the first 15 calendar
  days you are disabled. This timeframe is referred to as the elimination period. Your
  elimination period would end on April 27, 2017.

Your claim has been medically supported for Short Term Disability through April 20, 2017. As
this date is within the elimination period, we are unable to pay benefits at this time. To continue
our evaluation of your claim, additional information is needed.

**What We Need From You**

Please let us know if there are any changes or complications within this anticipated recovery
time frame. We will need additional information to better understand how your condition
impacts your ability to return to work. If you cannot return to work on April 21, 2017 for medical
reasons, please have your attending physician(s) provide us with the following medical
information:

- **Medical records (including treatment records, procedure records, physical therapy
  records and test results) from all treating providers from April 14, 2017 through the
  present.**
- **Restrictions and limitations (a list of things you should not and cannot do).**

Unum
The Benefits Center
PO Box 100158
Columbia, SC 29202-3158
Phone: 877-217-5497
Fax: 1-800-447-2498
www.unum.com

**unum**

August 19, 2020

DELTRESS HAVERLY
9711 CEDAR BLUFF DRIVE
HOUSTON, TX 77064

RE:     Haverly, Deltress
        Claim Number:       12815831
        Policy Number:      469967
        Unum Life Insurance Company of America

Dear Ms. Haverly:

I have attempted to return your call on August 19, 2020, but was unable to reach you.

Please note that we sent approval information to Kindred Healthcare for your claim on the following dates.

- 06/15/2017
- 06/08/2017
- 05/11/2017

For payment information, please reach out to the Kindred Benefits Marketplace at 1-800-991-6171.

I have also attached copies of your approval letters in this correspondence.

Ms. Haverly, if you have any questions, please feel free to contact me at 877-217-5497.

Sincerely,

*Jenn Hayes*

Jenn Hayes
Life Event Specialist

Enclosures:     -Claimant: Approval
                -Claimant: Approval
                -Claimant: Status

Unum
The Benefits Center
PO Box 100158
Columbia, SC 29202-3158
Phone: 877-217-5497
Fax: 1-800-447-2498
www.unum.com



June 7, 2017

DELTRESS HAVERLY
9711 CEDAR BLUFF DRIVE
HOUSTON, TX 77064

RE:  Haverly, Deltress
     Claim Number:      12815831
     Policy Number:     469967
     Unum Life Insurance Company of America

Dear Ms. Haverly:

Thank you for providing the information needed for your Short Term Disability claim. Your benefits have been approved through June 13, 2017.

You have my personal commitment to provide you with responsive and courteous service. I will keep you well informed about the status of your claim.

**What We Need From You**

Please let us know if there are any changes or complications within this anticipated recovery time frame. We will need additional information to better understand how your condition impacts your ability to return to work. If you cannot return to work on June 14, 2017 for medical reasons, please have your attending physician(s) provide us with the following medical information:

- **Medical records (including treatment records, procedure records, physical therapy records and test results) from all treating providers from June 01, 2017 forward.**
- **Restrictions and limitations (a list of things you should not and cannot do).**

The information provided will assist us in the continued evaluation of your claim. A note from your physician stating you are unable to return to work is not considered sufficient medical documentation.

If we have not received the additional information by July 28, 2017, we will make a decision based on the information available to us at that time.

**Information About The Family Medical Leave Act**

We also administer the FMLA (Family Medical Leave Act) for your employer and have shared this decision about your disability claim with our Leave Management Center. If you are eligible

for leave and have time available, you will receive separate communication about the status of your leave(s) from our Leave Management Center.

## How To Contact Us Or View Information About Your Claim

Ms. Haverly, we hope this letter has been clear and helpful to you. If you have any questions or would like to follow the status of your claim, you can do so conveniently through your secure online account at www.unum.com/claimant.

Through your account you have the option to:

- Go paperless and receive all correspondence electronically;
- View the current status of your claim including outstanding information; and
- Upload documentation or provide new information to help us evaluate your claim and return to work efforts.

You may also manage your leave with the Unum Customer App. The Unum Customer App is available for Apple and Android.

After reviewing your online account, if you should have additional questions, please call me at 877-217-5497, extension 47031. If I am unavailable to answer your call directly, our experienced representatives are available to assist you from 8 a.m. to 8 p.m. Eastern Time, Monday through Friday. We will identify your claim by your Social Security number or claim number, so please have one of these available when you call.

Sincerely,

*Jenn Hayes*

Jenn Hayes
Disability Benefits Specialist

**Memorial Hermann Pearland Imaging Services**
**10905 Memorial Hermann Drive Pearland, TX 77584**
**Ph #:713-383-4900**

Patient Name:     HAVERLY-COFFEY,             Admitting Physician:
DELTRESS ANN                                 Ordering Physician:   Sahi, Farzana Noor
DOB/Age/Sex:      01-07-1971 / 46 years / F
Med Rec Number:   033626695
Location:         RP POIP

## *Diagnostic Radiology*

Exam:                                 Accession Number:        Exam Date/Time:
Pelvis w Pelvis Transvaginal US       17-094-021717            4/4/2017 4:08:00 PM

**RADIOLOGY REPORT**

PROCEDURE: PELVIS ULTRASOUND

CLINICAL INDICATION: Pelvic pain.

COMPARISON: Pelvis ultrasound 7/11/2014 and 8/3/2012.

TECHNIQUE: Grayscale, color and Doppler transabdominal and transvaginal imaging of the pelvis was performed with standard technique. Static images are submitted.

FINDINGS:

TRANSABDOMINAL PELVIS ULTRASOUND:

UTERUS: The uterus is in a neutral position and enlarged measuring 13.2 x 7.5 x 8.5 cm (length x AP x width). There is trace fluid in the endometrial canal. (The uterus measured 13.4 x 5.6 x 7.5 cm on 07/11/2014.)

OVARIES: The ovaries are not seen. There is no demonstrable adnexal mass.

OTHER FINDINGS: The urinary bladder is partially distended and partially imaged without demonstrable abnormality. There is no demonstrable pelvic free fluid.

TRANSVAGINAL PELVIS ULTRASOUND:

UTERUS: There is trace fluid in the endometrial canal which is better depicted on the transabdominal examination. The maximal endometrial stripe thickness excluding the fluid measures 0.67 cm. LMP 04/04/2017. There is a 3.3 x 2.8 cm intramural fibroid in the posterior uterine body. There is a 2.8 x 2.2 cm intramural fibroid in the uterine fundus. There are subcentimeter cervical nabothian cysts. Images of the cervix are otherwise unremarkable. (3 intramural fibroids were noted on 07/11/2014 measuring 2.8 cm, 3 cm and 3.3 cm.)

OVARIES: The right ovary measures 3.9 x 3.7 x 4.6 cm. There is a 2.2 x 3.4 x 1.7 cm cyst with an irregular wall and minimal internal echoes suggesting internal debris in the right ovary. Arterial flow is demonstrated in the right ovary by spectral Doppler analysis. The left ovary is not seen. There is no demonstrable adnexal mass.

OTHER FINDINGS: There is no demonstrable pelvic free fluid.

IMPRESSION:
1. Enlarged leiomyomatous uterus.
2. Trace fluid in the endometrial canal.

3. There is a 3.4 cm mildly complex right ovarian cyst. A short interval follow-up pelvis ultrasound is suggested after 2-3 menstrual cycles for reassessment.
4. Nonvisualization of the left ovary.

SL: 15

Read by: Pohl, John Michael MD
Dictated Date/time: 04/04/17 17:45
Electronically Signed by: Pohl, John Michael MD        04/04/17 17:59
FINAL REPORT

Patient Financial #:    336288958503
Patient Type:    Outpatient
Admit Date:    04-04-2017
Discharge Date:    --

F. Sahi, M.D. P. L. L. C.
7777 Southwest Freeway
Suite 640
Houston, TX 77074

Unum
THE BENEFITS CENTER
PO BOX 100158
COLUMBIA, SC 29202-3158

||||·||·||·||·|·||·||·||·|·|·||·||·||·||·||·|||·||·|||||||·||·|||||·||·|·|·|·|·|·||||||·|·||·||||||
AT 017 000153 UNLTA3D1 000000



DELTRESS HAVERLY
9711 CEDAR BLUFF DR
HOUSTON TX 77064-2140

DIPIKA S. AMBANI, M.D., PLLC

## GYNECOLOGIC OFFICE ENCOUNTER FORM

| | | | | | |
|---|---|---|---|---|---|
| | | | Date | 10/28/16 | |

**PATIENT'S NAME** Haverly DeHress   DOB: 1-7-71   Age: 45 Years

| Vital Signs (Compat least 3 vitals) | Ht. 67 | Wt. 288 | BMI 45 | BP 126/92 | P 121 | R | LMP - 10/28/16 |

Last Pap Test: ☐ Normal ☐ Abnormal   Date: ~2014   Current Medications: ☐ None

Last Mammogram: ☐ Normal ☐ Abnormal   Date: ~2014   Iron   ALLERGIES: ☒ NKDA

**CHIEF COMPLAINTS:** c/o heavy bleeding x 1 wk - pasary disc

**HISTORY OF PRESENT ILLNESS (HPI)** ☐ New Problem ☑ Existing Problem   Elements: Location; Quality; Severity; Duration; Timing; Context; Modifying Factors; Associated Signs & Symptoms

Bleeding heavy. Refusing EmB today.
UPT Neg.   bloody . pinkish .
Depo Provera 150mg
R17591   exp 04/2019

| | Yes | No | Comments |
|---|---|---|---|
| Tobacco use | | | |
| Flu Vaccine taken | | | |
| Colorectal Cancer: FOBT or Flexible Sigmoidoscopy (>50yr) | | ✓ | |
| Osteoporotic Screening (> 65 yr) | | ✓ | |
| Medication Reconciliation (>65yr pastop within 30 days) | | ✓ | If yes, attach reconciliation form |

## REVIEW OF SYSTEMS

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Gastrointestinal | ☐ Diarrhea | ☐ Bloody stool | ☐ Nausea / Vomiting | ☐ Constipation | ☐ Flatulence | ☐ Pain | ☐ Other |
| Genitourinary | ☐ Hematuria | ☐ Dysuria | ☐ Urgency | ☐ Frequency | ☐ Abnormal Bleeding | ☐ Dyspareunia | ☐ Other |

## PHYSICAL EXAM

| CONSTITUTIONAL | Yes | No | Abnormal Findings | | Yes | No | Abnormal Findings |
|---|---|---|---|---|---|---|---|
| General appearance | | | | Genitourinary | | | |
| Well developed | ✓ | | | No breast masses or tenderness | ✓ | | |
| Well-nourished | ✓ | | Over wt | Normal rectal tone, no masses | | | |
| Normal habitus | ✓ | | | Normal external genitalia | | | |
| No deformities | | | | Normal urethral masses /tenderness | | | |
| Well-groomed | | | | No bladder fullness or masses | | | |
| | | | | No vaginal lesions or discharge | | | |
| Neck | | | | No cervical lesions or discharge | | | |
| Nontender, no masses | ✓ | | | Normal uterine size, contour | | | diford |
| No thyromegaly or nodules | ✓ | | | No adnexal tenderness/masses | | | |
| | | | | Normal anus and perineum | | | |
| Respiratory | | | | Uterus / Cervix absent | | | |
| Normal respiratory effort | ✓ | | | Urinary incontinence | | | |
| Clear to auscultation | ✓ | | | Skin | | | |
| | | | | No rashes, ulcers or lesions | ✓ | | |
| Cardiovascular | | | | | | | |
| RRR, no MRGs | ✓ | | | Lymphadenopathy | | | |
| No peripheral edema | ✓ | | | Neck | | | |
| | | | | Axillae | | ✓ | |
| Gastrointestinal | | | | Groin | | | |
| Abdomen soft, with no masses | ✓ | | | | | | |
| No Hepatosplenomegaly | | | + hernia | Neurological / Psychiatric | | | |
| No hernias | | | | Orientation | N | | |
| Guaiac negative (if indicated) | | | | Mood and Affect | N | | |

Minutes Counseled: 20   Total Encounter Time: 30

## ASSESSMENT / PLAN

(1) FeSO4 bid
(2) Depo x 1
(3) RTC 1 wk

(4) EmB/s 1 wk
(5) Pelvic U/S
(6) Schedule MVG
(7) Bloody Procedure

Page 5 of 16 (c)   ( < to 7521809 (FISTD800) at 05/24/2017 10:21:47 from (7132727650) Reg ID 201705241028136929ZE.

## PAIN CONSULT

**PATIENT NAME:**    HAVERLY-COFFEY, DELTRESS
**DATE OF VISIT:**    09/20/2017
**DATE OF BIRTH:**    01/17/1971

**REFERRING PHYSICIAN:**    DR. MARK SANDERS

**HISTORY OF PRESENT ILLNESS:** Thank you for referring your patient, Ms. Deltress Haverly-Coffee to this office. As you know, she is a 46-year-old female who was involved in a motor vehicle accident on 02/17/2017. She reports she was not taken to the emergency room from the scene.

She developed pain and on the next day, she drove herself to the emergency room. In the emergency room, x-rays were done and pain medications were prescribed. Unfortunately, she continued to have constant pain, was then seen by Dr. Kirpal Judge, and started on appropriate therapy. She reports some improvement. She was then seen by Dr. Mark Sanders who in turn referred her to this office for possible interventional pain procedures. She continues to complain of constant neck pain with radiation to the shoulders and arms. She also reports associated weakness on both hands. She reports associated numbness of the hands. She also complains of constant lower back pain with radiation of the pain to the buttocks and down the posterior and lateral aspects of the thighs and legs. She denies any weakness or numbness in the lower extremities.

She describes her pain as deep and dull, with an occasional sharp, stabbing, and shooting sensation. On the visual analog pain scale, she rates the pain as 8/10 now. Pain increases to 9/10 or 10/10 at its worst with increased activities, specifically bending, lifting, sitting, standing, reaching, and walking. Pain decreases to 5/10 or 6/10 at best with rest and oral medications. Sleep patterns are disturbed and she is sleeping in two to three-hour cycles. She is awakened secondary to the pain. She reports she is not working secondary to the accident and pain. Her activities of daily living are being interrupted secondary to the pain.

**PAST MEDICAL HISTORY:** Negative.

**PAST SURGICAL HISTORY:** Significant for a C-section times one, leiomyomectomy.

**PSYCHOLOGICAL HISTORY:** Negative.

**SOCIAL HISTORY:** Negative for smoking. Negative for ETOH. Negative for substance abuse.

**ALLERGIES:** Patient is not allergic to any medications.



# Advanced Interventional Pain, LLC

Mailing Address for Billing and Records: P.O. Box 8728, The Woodlands TX 77387-8728          713-208-8939

Physical Address: 4545 Bissonnet Blvd, Ste 110, Bellaire TX 77401                    info@HoustonAIP.com

www.advancedinterventionalpainhouston.com                                billing@HoustonAIP.com

## OPERATIVE NOTE

**PATIENT NAME:**          HAVERLY-COFFEY, DELTRESS
**DOB:**                   01/07/1971
**DATE OF PROCEDURE:**     07/11/2018
**SURGEON:**               OMAR D. VIDAL, M.D.

**REFERRING PHYSICIAN:**   DR. RODRIGUEZ

## RIGHT L5 AND RIGHT S1 TRANSFORAMINAL EPIDURAL STEROID INJECTION WITH LOCAL ANESTHETICS AND STEROIDS

**PREOPERATIVE DIAGNOSIS:**
1.    Lumbar radiculopathy.
2.    Low back pain.
3.    Herniated nucleus pulposus of the lumbar spine.

**REASON FOR THIS PROCEDURE:**
1.    Lumbar radiculopathy.
2.    Low back pain.
3.    Herniated nucleus pulposus of the lumbar spine.

**PROCEDURE PERFORMED:**
1.    Right L5 and right S1 transforaminal epidural steroid injection with local anesthetic and steroids.
2.    Fluoroscopy.
3.    Radiological examination and interpretation of lumbosacral epidurogram.

**PROCEDURE IN DETAIL:** Fluoroscopy was used as an independent procedure in this case.

**RADIOLOGIC EXAMINATION AND INTERPRETATION OF LUMBOSACRAL EPIDUROGRAM:** On examination of the lumbosacral spine in AP, lateral and oblique views, I was able to identify the needle tip within the neural foramen on the right at L5 and on the right at S1 with contrast material delineating well the nerve root and spreading into the epidural space.

**RIGHT L5 AND RIGHT S1 TRANSFORAMINAL EPIDURAL STEROID INJECTION WITH LOCAL ANESTHETIC AND STEROIDS:**
After risks and benefits were explained and informed written consent obtained, the patient was brought back to the special procedure room and placed in a prone position on the fluoroscopy table. The skin was prepped and draped in sterile fashion in the lumbosacral area. 1% Lidocaine

was used for local anesthesia. After landmarks were identified and marked using fluoroscopy as a guide, I guided a 22-gauge spinal needle into the neural foramen on the right at L5 and on the right at S1.

There were no signs of blood, CSF or paresthesia noted once entering the neural foramen. I then injected a small amount of contrast material delineating well the right L5 and the right S1 nerve roots and spreading into the epidural space. This was followed by 3 cc of 0.125% Bupivacaine with 40 mg of Kenalog through each needle. The needles were withdrawn. The patient tolerated this procedure well. Patient was taken to the post procedure room in stable condition. Questions were answered and discharge summary was given. Patient was discharged home when protocol was met.

**ASSESSMENT AND PLAN:**
1.     The patient should follow-up with Dr. Rodriguez.
2.     Call me with any problems.


OMAR D. VIDAL MD

OV:DT
D&T:  07/11/2018
DICTATED NOT READ

**CURRENT PAIN MEDICATIONS:** Tramadol 50 mg on average one tablet one per day, cyclobenzaprine 10 mg one tablet p.o. q.d. q.h.s., and meloxicam 15 mg one tablet p.o. q.d. On occasion, she takes ibuprofen.

**PHYSICAL EXAM:**
**GENERAL:** Vital signs: Blood pressure 136/89, pulse 83, respiratory rate 16 per minute, oxygen saturation 98% on room air. Oriented to time, place, and person. She is 5'5" tall and weighs approximately 254 pounds.
**HEENT:** Head is normocephalic. No lesions are noted. Pupils are equal and reactive.
**NECK:** Reveals a decreased range of motion, with complaints of pain to flexion and extension. There is some tenderness noted throughout the paravertebral muscles of the cervical spine, specifically at the level of C5-C6 and C6-C7. Deep pressure over the right and left cervical facets at these levels produces radiating discomfort. No myofascial trigger points are identified.
**LUNGS:** Clear to auscultation.
**HEART:** S1, S2, regular rate.
**ABDOMEN:** Soft, nondistended.
**LOWER BACK:** Reveals a decreased range of motion, with complaints of pain to both flexion and extension. There is tenderness noted throughout the paravertebral muscles of the lumbosacral spine, specifically at the levels of L4-L5. Deep pressure over the right and left lumbar facets at these levels produces some radiating discomfort. No myofascial trigger points are identified.
**EXTREMITIES:** Iliac compression test is negative. Faber test is negative. Straight leg raise is positive bilaterally for complaints of pain in the lower back. Sensory and motor appear to be intact. Deep tendon reflexes are equal bilaterally. Strength is decreased in the lower extremities secondary to pain in the lower back. Gait is mildly antalgic.

**ASSESSMENT AND PLAN:**
1. Cervical pain with complaints of cervical radiculitis.
2. Herniated nucleus pulposus of the cervical spine.
3. Lower back pain with complaints of lumbar radiculitis.
4. Herniated nucleus pulposus of the lumbar spine.

Unfortunately, Ms. Haverly-Coffey continues to complain of constant neck and lower back pain. She was seen by Dr. Mark Sanders who recommends cervical and lumbar epidural steroid injection. She is status post MRI of the cervical spine, done on 06/26/2017. This reveals at C6-C7 a posterior protrusion disc herniation, central and paracentral and left lateral aspect, more to the left, measuring 2.6 to 3.0-mm in AP diameter. It is indenting the thecal sac, touching the spinal cord, encroaching on the left lateral recess, and left neural foramen with resultant moderate left lateral spinal stenosis. Also, at C4-C5 and C5-C6, there is a posterior bulging disc measuring 1.5-mm in AP diameter indenting the thecal sac, not reaching the spinal cord. At C2-C3, C3-C4, there is a posterior protrusion disc herniation, central and paracentral region, measuring 2.0-mm in AP diameter, indenting the thecal sac, not reaching the spinal cord.

Based on physical exam, MRI reports, history, and recommendations by Dr. Mark Sanders, as well as the continued complaints of pain and radiculitis, Ms. Haverly-Coffey can benefit from a cervical epidural steroid injection at C6-C7 to address her cervical pain but more importantly the radiculopathy symptoms likely secondary to disc protrusions at this level touching the spinal cord. Risks, benefits, and alternative treatments were discussed with the patient, and she wishes to proceed. We will proceed with this procedure.

Regarding her lower back, she is status post MRI of the lumbar spine, done on 06/26/2017. This reveals at L2-L3, L3-L4, L4-L5, and a broad-based posterior protrusion disc herniation, central and lateral aspect, on both sides, measuring 2.6 to 2.8-mm in AP diameter, indenting the thecal sac, causing slight inferior neural foraminal stenosis bilaterally. At L5-S1, there is a posterior bulging disc measuring 2.0-mm in AP diameter, not reaching the thecal sac.

Based on physical exam, MRI reports, history, and more importantly the continued complaints of pain and radiculitis and also the recommendations by Dr. Sanders, she could benefit from a lumbar epidural steroid injection at L4-L5 to address the lower back pain likely secondary to disc protrusions at multilevels. Risks, benefits, and alternative treatments were discussed with the patient and she wishes to proceed. We will schedule for this procedure.

She should follow up with Dr. Sanders. Continue with active therapy with Dr. Judge. Call me with any problems. Return to this office three to four weeks post procedure on a p.r.n. basis.

Again, thank you for referring your patient to this office.

Sincerely,

OMAR D. VIDAL, M.D.

OV:DT/pch
D&T: 09/20/2017
#1018991
DICTATED NOT READ


## OPERATIVE REPORT

**PATIENT NAME:**    HAVERLY-COFFEY, DELTRESS
**DOB:**    01/07/1971
**DATE OF SURGERY:**    09/20/2017
**SURGEON:**    OMAR D. VIDAL, M.D.

**REFERRING PHYSICIAN:**    DR. SANDERS

### CERVICAL EPIDURAL STEROID INJECTION AT C6 AND C7

**PREOPERATIVE DIAGNOSIS:**
1.    Cervical radiculopathy.
2.    Cervical pain.
3.    Herniated nucleus pulposus of the cervical spine.

**POSTOPERATIVE DIAGNOSIS:**
1.    Cervical radiculopathy.
2.    Cervical pain.
3.    Herniated nucleus pulposus of the cervical spine.

**PROCEDURE PERFORMED:**
1.    Cervical epidural steroid injection with local anesthetic and steroids at C6 and C7.
2.    Fluoroscopy.
3.    Radiological examination and interpretation of cervical epidurogram.

**PROCEDURE IN DETAIL:** Fluoroscopy was used as an independent procedure in this case.

**RADIOLOGIC EXAMINATION AND INTERPRETATION OF CERVICAL EPIDUROGRAM:** On examination of the cervical spine in AP, lateral and oblique views, I was able to identify the needle tip within the epidural space with contrast medium spreading cephalad and caudal from the needle tip at C6 and C7.

**C6 and C7 CERVICAL EPIDURAL STEROID INJECTION WITH LOCAL ANESTHETIC AND STEROIDS:**
After risks and benefits were explained and informed written consent was obtained the patient was brought back to the special procedure room and placed in a prone position on the fluoroscopy table. The skin was prepped and draped in sterile fashion in the cervical area. Lidocaine 1% was used for local anesthesia. After landmarks were identified and marked using fluoroscopy as a guide, I guided an 18-gauge Tuohy needle to the epidural space under fluoroscopy guidance using loss of resistance technique.

There were no signs of blood, CSF or paresthesia noted once entering the epidural space. At this point I injected contrast medium showing good cephalad and caudal spread of the contrast medium within the epidural space. I then injected a total volume of 5 cc of 0.125% Bupivacaine with 40 mg of Kenalog. The needle was withdrawn. The patient tolerated this procedure well. Patient was taken to the post procedure room in stable condition. I answered all questions and provided a discharge summary to the patient. Patient was discharged home when protocol was met.

**ASSESSMENT AND PLAN:**
1. The patient is to follow-up with Dr. Sanders.
2. Call me with any problems.


OMAR D. VIDAL MD

OV:DT
D&T: 09/20/2017
DICTATED NOT READ









# ADVANCED INTERVENTIONAL PAIN

## DISCLOSURE AND CONSENT
## MEDICAL AND SURGICAL PROCEDURES

**TO THE PATIENT:** You have the right, as a patient, to be informed about your condition and the recommended surgical, medical, or diagnostic procedure to be used so that you may make the decision whether or not to undergo the procedure after knowing the risks and hazards involved. The disclosure is not meant to scare or alarm you; it is simply an effort to make you better informed so you may give or withhold your consent to the procedure.

I (we) voluntarily request Dr. _____, as my physician and such associate, technical assistants and other health care providers as they may deem necessary, to treat my condition which has been explained to me as: _____

_____

I (we) understand that the following surgical, medical and/or diagnostic procedures are planned for me and I (we) voluntarily consent and authorize these procedures: _____

I (we) understand that my physician may discover other or different conditions which require additional or different procedures than those planned. I (we) authorize my physician, such associates, technical assistants and other health care providers to perform such other procedures which are advisable in their professional judgment.

I (we) understand that no warranty or guarantee has been made to me as to result or cure.

Just as there may be risks and hazards in continuing my present condition without treatment, there are also risks and hazards related to the performance of the surgical, medical, and/or diagnostic procedures planned for me. I (we) realize that common to surgical, medical and/or diagnostic procedures is the potential for infection, blood clots in veins and lungs, hemorrhage, allergic reactions, and even death. I (we) also realize that the following risks and hazards may occur in connection with the procedure: _____

_____

I understand I am to rely on my physician for information about my condition, alternative forms of anesthesia and treatment, risks of non-treatment, the procedures to be used and the risks and hazards involved.

I (we) understand that my physician may or may not have financial interest in this facility, and that this will have no effect on the course of treatment necessary for my diagnosis. Nor will it have any effect on my course of treatment should I decide to have the prescribed procedure performed at another facility.

I (we) (do)(do not) consent to the observation of my surgical procedure by non-operating room personnel, as designated by my physician.

I (we) consent to my anesthetic care administered by a Certified Registered Nurse Anesthetist (CRNA) under the direct supervision of an M.D. anesthesiologist.

I (we) have been given the opportunity to ask questions about my condition, alternative forms of anesthesia and treatments, risks of non-treatment, the procedures to be used and the risks and hazards involved, and I (we) believe that I (we) have sufficient information to give this informed consent. I (we) certify this form has been fully explained to me, that I (we) have read or have had it read to me, that the blank spaces have been filled in and that I (we) understand it's content.

_____    _____    Date: 9/20/17   Time: _____
Signature of Patient or Other Legally Responsible Person    Relationship to patient

This form has been translated into _____ /Read to the patient by _____

_____    _____    _____
Printed Name of Person Signing Consent    Printed Name of the Translator/Reader: _____ /Signature: _____

Witness: _____
         Signature                          Print Name

Witness Address: 6750 West Loop S. Ste 830, Bellaire, TX 77401    ☐ Other: _____
**Physician:** the patient diagnosis, planned surgical/medical or diagnostic procedure, and the risks, benefits and alternatives associated with such procedures have been discussed with the patient.

_____    09/20/2017
Physician Signature    Date

## Disclosure and consent – Anesthesia and/or perioperative pain management (analgesia)

To the Patient: You have the right, as a patient, to be informed about your condition and the recommended surgical, medical, or diagnostic procedure to be used so that you may make the decision whether or not to undergo the procedure after knowing the risks and hazards involved. This disclosure is not meant to scare or alarm you; it is simply an effort to make you better informed so you may give or withhold your consent to the procedure.

I voluntarily request that anesthesia and/or perioperative pain management care (analgesia) as indicated below be administered to me (the patient). I understand it will be administered by; (1) an anesthesiologist, (2) the operating practitioner, and/or (3) an anesthesiologist assistant or certified registered nurse anesthetist under the delegation and/or medical direction of an anesthesiologist or the operating practitioner to the extent allowed by law, and such other health care providers as necessary. Perioperative means the period immediately before and until immediately after the procedure.

I understand that anesthesia/analgesia involves additional risks and hazards but I request the use of anesthetics/analgesia for the relief and protection from pain during the planned and additional procedures. I realize the type of anesthesia/analgesia may have to be changed possibly without explanation to me.

I understand that serious, but rare, complications can occur with all anesthetic/analgesic methods. Some of these risks are breathing and heart problems, drug reactions, nerve damage, cardiac arrest, brain damage, paralysis, or death.

I also realize that other complications may occur that are more specific to the following anesthetic/analgesic methods:

(Check all applicable anesthesia/analgesia methods and have the patient/other legally responsible person initial.)

☐ _____ GENERAL ANESTHESIA, TOTAL INTRAVENOUS ANESTHESIA (TIVA) – Minor discomfort; injury to vocal cords, teeth, lips, eyes; awareness during the procedure; memory dysfunction/loss; permanent organ damage.

☐ _____ SPINAL ANESTHESIA/ANALGESIA – Nerve damage; back pain; headache; infection; bleeding/epidural hematoma; chronic pain; medical necessity to convert to general anesthesia.

☐ _____ EPIDURAL ANESTHESIA/ANALGESIA – Nerve damage; back pain; headache; infection; bleeding/epidural hematoma; chronic pain; medical necessity to convert to general anesthesia.

☐ _____ MONITORED ANESTHESIA CARE (MAC), OR SEDATION/ANALGESIA – Memory dysfunction/loss; medical necessity to convert to general anesthesia.

☐ _____ REGIONAL BLOCK ANESTHESIA/ANALGESIA – Nerve damage; persistent pain; bleeding/hematoma; infection; medical necessity to convert to general anesthesia.

Additional Comments/Risks:
_____
_____

I understand that no promises have been made to me as to the result of anesthesia/analgesia methods.

I have been given an opportunity to ask questions about my anesthesia/analgesia methods, the procedures to be used, the risks and hazards involved, and alternative forms of anesthesia/analgesia. I believe that I have sufficient information to give this informed consent.

This form has been fully explained to me, I have read it of have had it read to me, the blank spaces have been filled in, and I understand its contents.

_____     Date 9/28  Time 10    AM/PM
Patient/Other legally responsible person (Signature)

Witness:
_____     _____
Signature                           Name (Print)

Advanced Interventional Pain
6750 West Loop S. Ste 830
Bellaire, TX 77401

# Advanced Interventional Pain

Physical: 6750 West Loop S. Ste 830, Bellaire, TX 77401
Office: (713) 208-8939
Fax: (713) 218-2478

FROM: *Sanders Clinic*  DATE *8/8/17*

TO:  OMAR VIDAL, M.D.

## PROFESSIONAL REFERRAL SLIP

Patient: *Deltress Haverly-Coffey*  DOI: *02/02/17*  DOB: *01/07/1971*

Address: *P.O. Box 541281*  City: *Houston*  State: *TX*  Zip: *77254*

Phone: *832-752-1308*  Cell Phone/Text Message: _____

Email: _____

X CONSULTATION & MEDICATION AS NEEDED  CASE HISTORY:
X TREATMENT                          _____ HAS BEEN FORWARDED SEPARATELY
_____ DIAGNOSTIC TESTING            _____ IS ATTACHED
_____ X-RAYS SENT WITH PATIENT      _____ BLOOD PRESSURE
                                     _____ BLOOD SUGAR

## PROCEDURE:

| X | ESI | *Cervical / Lumbar* |
|---|---|---|
| ___ | NERVE ROOT BLOCK | _____ |
| ___ | TRANSFORAMINAL ESI | _____ |
| ___ | FACET BLOCK | _____ |
| ___ | DISC DECOMPRESSION (PERC/DD) | _____ |
| ___ | OTHER | _____ |

Diagnosis/Symptoms:

CERVICAL: *Bulging*

THORASIC: _____

LUMBAR: *HNPs*

Referring Doctor: *Mark S. Sanders, M.D*  Phone: *713-622-3576*

Appointment Date: *7/28*  Time *10:45*

Doctor's Signature: _____

Billing Address: P.O. Box 8728 • The Woodlands, TX • 77387-8728
Info@HoustonAIP.com

From:MRZ Medical Group          713 270 7655          04/20/2017 15:38      #371 P.003/009

Fax Server 03      4/18/2017 11:57:58 AM   PAGE   5/005   Fax Server

# unum®

**SHORT TERM DISABILITY CLAIM FORM**
The Benefits Center
P.O. Box 100158
Columbia, SC 29202-3158
www.unum.com
Toll-free: 1-800-858-6843  Fax: 1-800-447-2498
Call toll-free Monday through Friday, 8 a.m. to 8 p.m. (Eastern Time)

%*$*)fl\)-*%*\(*!%#\)-!*%%*#*ff%#!-*\)!!

02875006003301002

## ATTENDING PHYSICIAN STATEMENT (Continued)

Patient Name (Last Name, First Name, MI, Suffix)

| H | A | N | E | R | L | Y | | A | N | N | | D | E | U | T | R | E | S | S | | | | |

Date of Birth (mm/dd/yy)

| 0 | 1 | 0 | 7 | 7 | 1 |

**Other Providers:** Are you aware of or have you referred your patient to other treating providers? If yes, please provide complete name, contact information and specialty of any other treating physicians.

| Name | Specialty | Address | Phone # |
|---|---|---|---|
| Dr Patel | Gynae | 7777 SW Fwy North Ty 77074 | 281-953-1710 |

Have you advised the patient to return to work?  ☐ Yes  ☒ No | Expected return to work date (mm/dd/yy):  ☐ Full Time  ☐ Part Time

Part-time hours per day

## C. Functional Capacity

If your patient *does not* have physical and/or behavioral health RESTRICTIONS (activities patient should not do) and/or LIMITATIONS (activities patient cannot do), please initial here _____ and go to *SECTION D.*

**Please note:** When considering a standard 8 hour workday with breaks (approximately every two hours) please quantify terms that may not be uniformly understood such as "prolonged", "repetitive", "light-duty", "heavy lifting", or "stressful situations". In addition, never means not at all, occasional means more than never but less than 33% of the time; frequent means 34-66% of the time, and constant means 67-100% of the time.

### Restrictions and/or Limitations

If your patient has CURRENT RESTRICTIONS (activities patient should not do) and/or LIMITATIONS (activities patient cannot do) list below. Please be specific and understand that a reply of "no work" or "totally disabled" will not enable us to evaluate your patient's claim for benefits and may result in us having to contact you for clarification.

Unht fo Work

Please provide the duration of these restrictions and limitations. From (mm/dd/yy): 4/13/17 To (mm/dd/yy): 6/30/17

**FRAUD NOTICE:** Any person who knowingly files a statement of claim containing false or misleading information is subject to criminal and civil penalties. This includes Attending Physician portions of the claim form.

## D. Signature of Attending Physician

The above statements are true and complete to the best of my knowledge and belief.

Physician Name (Last Name, First Name, MI, Suffix) Please Print

Sahi Fanzeno

Degree/Specialty

MD

Address

7777 SW Fwy

F. Sahi, M.D. P. L. L. C.
7777 Southwest Freeway
Suite 640
Houston, TX 77074

City

Houston

State

TX

Zip

77074

| Telephone Number | Fax Number | Physician Tax ID Number: | Are you related to this patient?  ☐ Yes  ☒ No |
|---|---|---|---|
| 713-270-0477 | 713-270-7655 | 76-0503656 | If yes, what is the relationship? |

Signature of Physician

X _____

Date

4/20/17

CL-1104 (02/17)                                2

Unum
The Benefits Center
PO Box 100158
Columbia, SC 29202-3158
Phone: **877-217-5497**
Fax: **1-800-447-2498**
www.unum.com



November 4, 2020

DELTRESS HAVERLY
9711 CEDAR BLUFF DRIVE
HOUSTON, TX 77064

RE:   Haverly, Deltress
      Claim Number:      12815831
      Policy Number:     469967
      Unum Life Insurance Company of America

Thank you for taking the time to speak with me on November 03, 2020. This letter is a follow-up to that conversation.

Attached is your medical file.

Your employer would have provided all payments. We sent the paylist on them on the following dates.

06/15/2017
06/08/2017
05/11/2017

Ms. Haverly, if you have any questions, please feel free to contact me at 877-217-5497.

Sincerely,

*Jenn Hayes*

Jenn Hayes
Life Event Specialist


Enclosures:   Medical: Medical Office Notes
              Medical: Records
              Medical: Records
              Medical: Records
              Medical: Records
              Medical: Records

Unum
The Benefits Center
PO Box 100158
Columbia, SC 29202-3158
Phone: **877-217-5497**
Fax: **1-800-447-2498**
www.unum.com

**unum**

November 4, 2020

DELTRESS HAVERLY
9711 CEDAR BLUFF DRIVE
HOUSTON, TX 77064

RE:     Haverly, Deltress
        Claim Number:       12815831
        Policy Number:      469967
        Unum Life Insurance Company of America

Thank you for taking the time to speak with me on November 03, 2020.  This letter is a follow-up to that conversation.

Attached is your medical file.

Your employer would have provided all payments.  We sent the paylist on them on the following dates.

06/15/2017
06/08/2017
05/11/2017

Ms. Haverly, if you have any questions, please feel free to contact me at 877-217-5497.

Sincerely,

*Jenn Hayes*

Jenn Hayes
Life Event Specialist

Enclosures:     Medical: Medical Office Notes
                Medical: Records
                Medical: Records
                Medical: Records
                Medical: Records
                Medical: Records

Unum
The Benefits Center
PO Box 100158
Columbia, SC 29202-3158
Phone: **877-217-5497**
Fax: **1-800-447-2498**
www.unum.com

November 4, 2020

DELTRESS HAVERLY
9711 CEDAR BLUFF DRIVE
HOUSTON, TX 77064

RE: Haverly, Deltress
Claim Number: 12815831
Policy Number: 469967
Unum Life Insurance Company of America

Thank you for taking the time to speak with me on November 03, 2020. This letter is a follow-up to that conversation.

Attached is your medical file.

Your employer would have provided all payments. We sent the paylist on them on the following dates.

06/15/2017
06/08/2017
05/11/2017

Ms. Haverly, if you have any questions, please feel free to contact me at 877-217-5497.

Sincerely,

*Jenn Hayes*

Jenn Hayes
Life Event Specialist

Enclosures: Medical: Medical Office Notes
Medical: Records
Medical: Records
Medical: Records
Medical: Records
Medical: Records

Unum
The Benefits Center
PO Box 100158
Columbia, SC 29202-3158
Phone: **877-217-5497**
Fax: **1-800-447-2498**
www.unum.com



November 4, 2020

DELTRESS HAVERLY
9711 CEDAR BLUFF DRIVE
HOUSTON, TX 77064

RE: Haverly, Deltress
Claim Number: 12815831
Policy Number: 469967
Unum Life Insurance Company of America

Thank you for taking the time to speak with me on November 03, 2020. This letter is a follow-up to that conversation.

Attached is your medical file.

Your employer would have provided all payments. We sent the paylist on them on the following dates.

06/15/2017
06/08/2017
05/11/2017

Ms. Haverly, if you have any questions, please feel free to contact me at 877-217-5497.

Sincerely,

*Jenn Hayes*

Jenn Hayes
Life Event Specialist

Enclosures: Medical: Medical Office Notes
Medical: Records
Medical: Records
Medical: Records
Medical: Records
Medical: Records



Unum
The Benefits Center
PO Box 100158
Columbia, SC 29202-3158
Phone: **877-217-5497**
Fax: **1-800-447-2498**
www.unum.com

June 7, 2017

DELTRESS HAVERLY
9711 CEDAR BLUFF DRIVE
HOUSTON, TX 77064

RE:    Haverly, Deltress
        Claim Number:     12815831
        Policy Number:     469967
        Unum Life Insurance Company of America

Dear Ms. Haverly:

Thank you for providing the information needed for your Short Term Disability claim. Your benefits have been approved through June 13, 2017.

You have my personal commitment to provide you with responsive and courteous service. I will keep you well informed about the status of your claim.

**What We Need From You**

Please let us know if there are any changes or complications within this anticipated recovery time frame. We will need additional information to better understand how your condition impacts your ability to return to work. If you cannot return to work on June 14, 2017 for medical reasons, please have your attending physician(s) provide us with the following medical information:

- **Medical records (including treatment records, procedure records, physical therapy records and test results) from all treating providers from June 01, 2017 forward.**
- **Restrictions and limitations (a list of things you should not and cannot do).**

The information provided will assist us in the continued evaluation of your claim. A note from your physician stating you are unable to return to work is not considered sufficient medical documentation.

If we have not received the additional information by July 28, 2017, we will make a decision based on the information available to us at that time.

**Information About The Family Medical Leave Act**

We also administer the FMLA (Family Medical Leave Act) for your employer and have shared this decision about your disability claim with our Leave Management Center. If you are eligible

Unum
The Benefits Center
PO Box 100158
Columbia, SC 29202-3158
Phone: **877-217-5497**
Fax: **1-800-447-2498**
www.unum.com



May 9, 2017

DELTRESS HAVERLY
9711 CEDAR BLUFF DRIVE
HOUSTON, TX 77064

RE:    Haverly, Deltress
        Claim Number:     12815831
        Policy Number:     469967
        Unum Life Insurance Company of America

Dear Ms. Haverly:

Thank you for providing the information needed for your Short Term Disability claim. Your benefits have been approved through May 04, 2017.

You have my personal commitment to provide you with responsive and courteous service. I will keep you well informed about the status of your claim.

**What We Need From You**

Please let us know if there are any changes or complications within this anticipated recovery time frame. We will need additional information to better understand how your condition impacts your ability to return to work. If you cannot return to work on May 05, 2017 for medical reasons, please have your attending physician(s) provide us with the following medical information:

- **Medical records (including treatment records, procedure records, physical therapy records and test results) from all treating providers from April 20, 2017 forward.**
- **Restrictions and limitations (a list of things you should not and cannot do).**

The information provided will assist us in the continued evaluation of your claim. A note from your physician stating you are unable to return to work is not considered sufficient medical documentation.

If we have not received the additional information by June 23, 2017, we will make a decision based on the information available to us at that time.

**Information About The Family Medical Leave Act**

We also administer the FMLA (Family Medical Leave Act) for your employer and have shared this decision about your disability claim with our Leave Management Center. If you are eligible

for leave and have time available, you will receive separate communication about the status of your leave(s) from our Leave Management Center.

**How To Contact Us Or View Information About Your Claim**

Ms. Haverly, we hope this letter has been clear and helpful to you. If you have any questions or would like to follow the status of your claim, you can do so conveniently through your secure online account at www.unum.com/claimant.

Through your account you have the option to:

- Go paperless and receive all correspondence electronically;
- View the current status of your claim including outstanding information; and
- Upload documentation or provide new information to help us evaluate your claim and return to work efforts.

You may also manage your leave with the Unum Customer App. The Unum Customer App is available for Apple and Android.

After reviewing your online account, if you should have additional questions, please call me at 877-217-5497, extension 47031. If I am unavailable to answer your call directly, our experienced representatives are available to assist you from 8 a.m. to 8 p.m. Eastern Time, Monday through Friday. We will identify your claim by your Social Security number or claim number, so please have one of these available when you call.

Sincerely,

*Jenn Hayes*

Jenn Hayes
Disability Benefits Specialist

**FARZANA N. SAHI, M.D., P.L.L.C.**

DIPLOMATE AMERICAN BOARD OF INTERNAL MEDICINE

7777 Southwest Freeway, Suite 640

Houston, Texas 77074

**Phone: (713) 270-0477**

DEA No. BS4758059

NAME  HAVERLY , DECTRESS  DOB  01/07/1971

ADDRESS  DATE  6/1/2017

℞

Mc Deceren is Under my care for heavy bleeding
and anaemia.
She is been on bed rest since 4/13/17.
Patient continued to have heavy
bleeding resulting in ER visit on 4/30/17.
I have advised Patient to continue
bed rest until endometrial biopsy
is done.

REFILL_____TIMES  PRN____NR  F. Sahi, M.D. P. L. L. C.
7777 Southwest Freeway
Suite 640
Houston, TX 77074

Physicians Signature

# Exhibit

# F



# PERFORMANCE EVALUATION

| ASSOCIATE NAME: | Haverly,Deltress | SELF EVALUATION (Check the box): | ☐ |
|---|---|---|---|
| MANAGER NAME: | Mellonie Simon | PERFORMANCE EVALUATION PERIOD: (Month/Year TO Month/Year): | 12/14-12/2015 |
| JOB TITLE: | Staffing Coodinator | NEXT EVALUATION DATE: | 12/2016 |
| BUSINESS UNIT and LOCATION: | HOU-CC | PERFORMANCE SCORE: | 4.9 |

**SIGNFICANT ACCOMPLISHMENTS: (List at least 2 of the Associate's significant accomplishments during this evaluation period)**
1. Deltress continues to maintain her auth vs billed above the required 96.5%.
2. Deltress has a great rapport with her clients, providers and coworkers.
3. Deltress has high retention with clients and providers.
4. Deltress started working the Vesta system with payroll in 7/2015, she has maintained all of the above and completes her Vesta daily

**GOALS FOR THE NEXT PERFORMANCE PERIOD: (List at least 2)**
1. Continue to Maintain auth vs billed at or above 96.5 %
2. Continue to keep her client and provider retention high.

**ASSOCIATE COMMENTS:**

**OVERALL JOB PERFORMANCE SCORE (Indicate comments below on the Associate's performance/metrics based on specific required job outcomes)**

TOTAL SCORE

5

Deltress is an excellent Associate and is an asset the company

## PERFORMANCE EVALUATION SCORING STANDARDS

| 1- Unacceptable | 2- Meets Some Requirements | 3- Achieve Requirements | 4- Exceeds Requirements | 5- Excellent |
|---|---|---|---|---|
| The Associate's performance is unsatisfactory and requires immediate improvement. The Associate does not meet most job requirements. | The Associate needs improvement to meet major requirements. The Associate moderately meets job requirements and expectations in certain areas. Improvement is necessary. | The Associate fully meets the job requirements and performance standards. The Associate performs on a consistent basis and the work is of good quality. | The Associate more then meets the job requirements and performance standards. The Associate's achievements more than exceeded planned objectives. | The Associate's performance is outstanding in all areas. The Associate's achievements consistently exceed planned objectives by a substantial degree. The Associate demonstrates a high level of excellence and exceptional application of knowledge, skill, competency, ability and self-motivation. |

## SIGNATURES:

Associate Signature: _____ Date: 12/18/15

Manager Signature: _____ Date: 12/18/15

*The Associate's signature denotes that the Manager has discussed this evaluation with the Associate. An Associate's signature does not necessarily constitute an agreement or acceptance of the rating.*



# Harden
HEALTHCARE

## PERFORMANCE EVALUATION

| ASSOCIATE NAME: | Haverly,Deltress | SELF EVALUATION (Check the box): | ☐ |
| MANAGER NAME: | Mellonie Simon | PERFORMANCE EVALUATION PERIOD: (Month/Year TO Month/Year): | 12/14-12/2015 |
| JOB TITLE: | Staffing Coodinator | NEXT EVALUATION DATE: | 12/2016 |
| BUSINESS UNIT and LOCATION: | HOU-CC | PERFORMANCE SCORE: | 4.9 |

**SIGNIFICANT ACCOMPLISHMENTS: (List at least 2 of the Associate's significant accomplishments during this evaluation period)**

1. Deltress continues to maintain her auth vs billed above the required 98.5%.
2. Deltress has a great rapport with her clients, providers and caseworkers.
3. Deltress has high retention with clients and providers .
4. Deltress started working the Vesta system with payroll in 7/2015, she has maintained all of the above and completes her Vesta daily

**GOALS FOR THE NEXT PERFORMANCE PERIOD: (List at least 2)**

1. Continue to Maintain auth vs billed at or above 98.5 %
2. Continue to keep her client and provider retention high.

**ASSOCIATE COMMENTS:**

**OVERALL JOB PERFORMANCE SCORE (indicate comments below on the Associate's performance metrics based on specific required job outcomes)**

Deltress is an excellent Associate and is an asset the company

**TOTAL SCORE**

5

## PERFORMANCE EVALUATION SCORING STANDARDS

| 1- Unacceptable | 2- Meets Some Requirements | 3- Achieve Requirements | 4- Exceeds Requirements | 5- Excellent |
|---|---|---|---|---|
| The Associate's performance is unsatisfactory and requires immediate improvement. The Associate does not meet most job requirements. | The Associate needs improvement to meet major requirements. The Associate moderately meets job requirements and expectations in certain areas. Improvement is necessary. | The Associate fully meets the job requirements and performance standards. The Associate performs on a consistent basis and the work is of good quality. | The Associate more than meets the job requirements and performance standards. The Associate's achievements more than exceeded planned objectives. | The Associate's performance is outstanding in all areas. The Associate's achievements consistently exceed planned objectives by a substantial degree. This Associate demonstrates a high level of excellence and exceptional application of knowledge, skill, competency, ability and self-motivation. |

**SIGNATURES:**

Associate Signature: _____ Date: 12/18/15

Manager Signature: _____ Date: 12/18/15

*The Associate's signature denotes that the Manager has discussed this evaluation with the Associate. An Associate's signature does not necessarily constitute an agreement or acceptance of the rating.

## PERFORMANCE EVALUATION FACTORS

| OPERATIONAL EXCELLENCE | SCORE |
|---|---|
| Decisions show consideration for customer impact. | 5 |
| Continuously improves performance and strives for accuracy and quality in results. | 5 |
| Demonstrates sufficient skills and knowledge to perform all job responsibilities. | 5 |
| Uses current level of knowledge to solve problems effectively. | 5 |
| Plans and organizes work efficiently to meet deadlines. Makes good judgments about using resources. | 5 |
| Stays current on issues. Actively seeks improvement of technical and non-technical skills, knowledge and abilities. | 4 |
| Seeks solutions acceptable to all and fosters collaboration. | 5 |
| Implements changes required in a timely manner. | 5 |
| TOTAL SCORE | 4.9 |

COMMENTS:

| COMPASSION | SCORE |
|---|---|
| Decisions and actions reflect consideration of this value. | 5 |
| Lives the Golden Rule with Residents, Patients and Associates. | 5 |
| Puts the needs of others above their own in a genuine way (Servant Leadership). | 5 |
| Values cultural diversity by promoting understanding and acceptance. | 4 |
| TOTAL SCORE | 4.8 |

COMMENTS:

| MOTIVATION | SCORE |
|---|---|
| Achieves desired results. | 5 |
| The Associate is a self-starter and takes action on their own in performing job assignments and recommending improvements. | 5 |
| Shares, believes and models the vision and values of the Harden Healthcare family of companies. | 5 |
| Demonstrates commitment to their team and department. | 5 |
| Seeks feedback from others for self discovery and growth. | 5 |
| TOTAL SCORE | 5.0 |

COMMENTS:

| PERSONAL INTEGRITY | SCORE |
|---|---|
| Treats others with respect and dignity. | 5 |
| Holds self to the same standards of performance expected of others. | 5 |
| Effectively uses or incorporates technology to improve service and/or accomplish assigned tasks. | 4 |
| Considers all aspects of a situation before rendering a decision and applies logic and reason in identifying problems and solutions. | 5 |
| Adapts to new technologies and uses technology to increase productivity. | 4 |
| Maintains attendance standards. | 5 |
| Keeps technical skills up to date. | 4 |
| Invests in self-improvement seeking balance between personal life and professional life. | 4 |
| Sets clear expectations to create and instill a sense of ownership. | 5 |
| TOTAL SCORE | 4.6 |

COMMENTS:

| COMMUNICATION | SCORE |
|---|---|
| Constructs and delivers messages in a way that can be comprehended and acted upon. | 4 |
| Fosters open dialogue, conflict resolution, and effective relationships with all. | 5 |
| Shows willingness to make decisions, acknowledges mistakes, and welcomes change as an opportunity. | 4 |
| Develops and utilizes listening and communication skills. | 5 |
| TOTAL SCORE | 4.5 |

COMMENTS:

| Performance Evaluation Factors | Total Score | Weighting for each factor |
|---|---|---|
| Job Performance Score | 5.0 | 0.75 |
| Operational Excellence | 4.9 | 0.05 |
| Compassion | 4.8 | 0.05 |
| Motivation | 5.0 | 0.05 |
| Personal Integrity | 4.6 | 0.05 |
| Communication | 4.5 | 0.05 |
| | Performance Score (Weighted Avg) | |
| | 4.9 | |



# Clinical & Admin Employee Performance Update – Confidential

| Employee Name: | **Haverly, Deltress** | Job Title: | **Staffing Coordinator** |
|---|---|---|---|
| Manager: | **Mellonie Simon** | Date: | **8/1/16** |
| Review Period: | **1/1/16 to 6/30/2016** | | |

Assign the appropriate rating using the following Performance Rating Scale:

**5 - Superior   4 – Exceeds Expectations   3 – Meets Expectations**
**2 – Does Not Consistently Meet   1 - Unsatisfactory   NA – Not Applicable**

| | |
|---|---|
| **Quality of Work** (consider quality of work and promptness in which it is completed) | 4 |
| **Productivity** (ability to produce the quantity of acceptable work that meets Kindred's standards) | 4 |
| **Knowledge of Job** (knowledge of present job, of the work closely related to it and equipment necessary to perform the job function) | 5 |
| **Reliability and Dependability** (amount of supervision required and job performance regarding job completion and follow-up) | 5 |
| **Attendance** (overall attendance and punctuality) | 5 |
| **Initiative** (extent to which new work assignments and duties are sought when necessary) | 5 |
| **Working Relationships** (willingness to work with and help others, the ability to accept constructive criticism, and cooperate with fellow employees and supervisors) | 4 |
| **Adherence to Company Policies and Practices** (follows Kindred's policies and procedures) | 4 |
| *Right click and choose "Update Field" to calculate Rating*   **OVERALL RATING:** | **4.50** |

- Deltress had good knowledge and has done a good job of learning the Vesta system

- Continues to exceed the Vesta expectation above 85% daily.

- Staffs clients timely for her caseload and assists other Staffing Coordinators with staffing on other areas.

- AVB was at or above 95% for 1/2016, 2/2016 and 4/2016.


- Maintain AVB at 96% or above monthly

- Continue to maintain Vesta completion at or above 85% daily

- Staff clients without providers timely to ensure all service is provided.



# Clinical & Admin Employee Performance Update – Confidential

| | | | |
|---|---|---|---|
| Employee Name: | **Haverly, Deltress** | Job Title: | **Staffing Coordinator** |
| Manager: | **Mellonie Simon** | Date: | **8/1/16** |
| Review Period: | **1/1/16** to **6/30/2016** | | |

Assign the appropriate rating using the following Performance **Rating Scale**:
    **5** - Superior    **4 – Exceeds Expectations**    **3** – Meets Expectations
    **2 – Does Not Consistently Meet**    **1** - Unsatisfactory    **NA** – Not Applicable

| | |
|---|---|
| **Quality of Work** *(consider quality of work and promptness in which it is completed)* | 4 |
| **Productivity** *(ability to produce the quantity of acceptable work that meets Kindred's standards)* | 4 |
| **Knowledge of Job** *(knowledge of present job, of the work closely related to it and equipment necessary to perform the job function)* | 5 |
| **Reliability and Dependability** *(amount of supervision required and job performance regarding job completion and follow-up)* | 5 |
| **Attendance** *(overall attendance and punctuality)* | 5 |
| **Initiative** *(extent to which new work assignments and duties are sought when necessary)* | 5 |
| **Working Relationships** *(willingness to work with and help others, the ability to accept constructive criticism, and cooperate with fellow employees and supervisors)* | 4 |
| **Adherence to Company Policies and Practices** *(follows Kindred's policies and procedures)* | 4 |
| *Right click and choose "Update Field" to calculate Rating*    OVERALL RATING: | **4.50** |

- Deltress had good knowledge and has done a good job of learning the Vesta system

- Continues to exceed the Vesta expectation above 85% daily.

- Staffs clients timely for her caseload and assists other Staffing Coordinators with staffing on other areas.

- AVB was at or above 95% for 1/2016, 2/2016 and 4/2016.

- Maintain AVB at 96% or above monthly

- Continue to maintain Vesta completion at or above 85% daily

- Staff clients without providers timely to ensure all service is provided.

| PERFORMANCE EVALUATION FACTORS | |
|---|---|

| OPERATIONAL EXCELLENCE | SCORE |
|---|---|
| Decisions show consideration for customer impact. | 5 |
| Continuously improves performance and strives for accuracy and quality in results. | 5 |
| Demonstrates sufficient skills and knowledge to perform all job responsibilities. | 5 |
| Uses current level of knowledge to solve problems effectively. | 5 |
| Plans and organizes work efficiently to meet deadlines. Makes good judgments about using resources. | 5 |
| Stays current on issues. Actively seeks improvement of technical and non-technical skills, knowledge and abilities. | 4 |
| Seeks solutions acceptable to all and fosters collaboration. | 5 |
| Implements changes required in a timely manner. | 5 |
| TOTAL SCORE | 4.9 |

COMMENTS:

| COMPASSION | SCORE |
|---|---|
| Decisions and actions reflect consideration of this value. | 5 |
| Lives the Golden Rule with Residents, Patients and Associates. | 5 |
| Puts the needs of others above their own in a genuine way (Servant Leadership). | 5 |
| Values cultural diversity by promoting understanding and acceptance. | 4 |
| TOTAL SCORE | 4.8 |

COMMENTS:

| MOTIVATION | SCORE |
|---|---|
| Achieves desired results. | 5 |
| The Associate is a self-starter and takes action on their own in performing job assignments and recommending improvements. | 5 |
| Shares, believes and models the vision and values of the Harden Healthcare family of companies. | 5 |
| Demonstrates commitment to their team and department. | 5 |
| Seeks feedback from others for self discovery and growth. | 5 |
| TOTAL SCORE | 5.0 |

COMMENTS:

| PERSONAL INTEGRITY | SCORE |
|---|---|
| Treats others with respect and dignity. | 5 |
| Holds self to the same standards of performance expected of others. | 5 |
| Effectively uses or incorporates technology to improve service and/or accomplish assigned tasks. | 4 |
| Considers all aspects of a situation before rendering a decision and applies logic and reason in identifying problems and solutions. | 5 |
| Adapts to new technologies and uses technology to increase productivity. | 4 |
| Maintains attendance standards. | 5 |
| Keeps technical skills up to date. | 4 |
| Invests in self-improvement seeking balance between personal life and professional life. | 4 |
| Sets clear expectations to create and instill a sense of ownership. | 5 |
| TOTAL SCORE | 4.6 |

COMMENTS:

| COMMUNICATION | SCORE |
|---|---|
| Constructs and delivers messages in a way that can be comprehended and acted upon. | 4 |
| Fosters open dialogue, conflict resolution, and effective relationships with all. | 5 |
| Shows willingness to make decisions, acknowledges mistakes, and welcomes change as an opportunity. | 4 |
| Develops and utilizes listening and communication skills. | 5 |
| TOTAL SCORE | 4.5 |

COMMENTS:

| Performance Evaluation Factors | Total Score | Weighting for each factor |
|---|---|---|
| Job Performance Score | 5.0 | 0.75 |
| Operational Excellence | 4.9 | 0.05 |
| Compassion | 4.8 | 0.05 |
| Motivation | 5.0 | 0.05 |
| Personal Integrity | 4.6 | 0.05 |
| Communication | 4.5 | 0.05 |

| Performance Score (Weighted Avg) |
|---|
| 4.9 |

**Vesta Compliance Counts/%s**   1/1/17 - 1/31/17   Houston

| Houston | Total Visits | Auto-verified | | Manual Verified Pref | | Total Preferred | | Manual Verified Non Pref | |
|---|---|---|---|---|---|---|---|---|---|
| | | # | % | # | % | # | % | # | % |
| **Branch Total** | 73,255 | 20,320 | 28% | 48,076 | 66% | 68,396 | 93% | 4,859 | 7% |
| Spv 151 | 3,269 | 611 | ▓ | 2,564 | 78% | 3,175 | 97% | 94 | 3% |
| Spv 152 | 3,099 | 958 | 31% | 1,964 | 63% | 2,922 | 94% | 177 | 6% |
| Spv 153 | 3,367 | 786 | 23% | 2,045 | 61% | 2,831 | 84% | 536 | ▓ |
| Spv 154 | 3,271 | 795 | 24% | 2,359 | 72% | 3,154 | 96% | 117 | 4% |
| Spv 155 | 2,757 | 1,036 | ▓ | 1,646 | 60% | 2,682 | 97% | 75 | 3% |
| Spv 300 | 2,883 | 506 | 33% | 1,769 | 61% | 2,275 | 79% | 608 | 5% |
| Spv 301 | 3,044 | 1,001 | 33% | 1,879 | 62% | 2,880 | 95% | 164 | 5% |
| Spv 302 | 3,327 | 1,233 | 37% | 1,972 | 59% | 3,205 | 96% | 122 | 4% |
| Spv 303 | 3,901 | 1,554 | ▓ | 2,314 | 59% | 3,868 | 99% | 33 | ▓ |
| Spv 304 | 3,360 | 921 | 27% | 2,327 | 69% | 3,248 | 97% | 112 | 3% |
| Spv 306 | 3,575 | 866 | 24% | 2,304 | 64% | 3,170 | 89% | 405 | 11% |
| Spv 308 | 3,494 | 1,112 | 32% | 2,268 | 65% | 3,380 | 97% | 114 | 3% |
| Spv 309 | 3,122 | 1,060 | 34% | 1,956 | 63% | 3,016 | 97% | 106 | 3% |
| Spv 310 | 2,878 | 790 | 27% | 1,897 | 66% | 2,687 | 93% | 191 | 7% |
| SPV 345 | 2,937 | 624 | 21% | 2,287 | 78% | 2,911 | 99% | 26 | ▓ |
| Spv 346 | 3,278 | 1,167 | 36% | 1,949 | 59% | 3,116 | 95% | 162 | 5% |
| Spv 347 | 3,413 | 656 | ▓ | 2,623 | 77% | 3,279 | 96% | 134 | 4% |
| Spv 348 | 3,410 | 802 | 24% | 2,598 | 76% | 3,400 | 100% | 10 | ▓ |
| Spv 349 | 3,040 | 602 | 20% | 2,402 | 79% | 3,004 | 99% | 36 | ▓ |
| Spv 350 | 2,837 | 769 | 27% | 1,574 | 55% | 2,343 | 83% | 494 | ▓ |
| Spv 351 | 2,949 | 769 | 26% | 1,790 | 61% | 2,559 | 87% | 390 | 13% |
| Spv 352 | 3,292 | 734 | 22% | 1,958 | 59% | 2,692 | 82% | 600 | ▓ |
| Spv 354 | 2,752 | 968 | 35% | 1,631 | 59% | 2,599 | 94% | 153 | 6% |

*My caseload 303*

*# in*

*# IS Document is The Compliance Counts in Each Care Coordinator Supervisor Caseload my Spv-303 99 0% percent Which shows That was x almost 190 percent*

*# Sr*

# Exhibit G

**Kindred** Healthcare

Dear Delfress Haverly:

I am delighted to congratulate you on your recent achievement. You have reached a significant service milestone in your career with Kindred at Home.

The work you perform helps make us a better homecare and hospice provider. Over this period of time, you have shown a commitment to performing your job with true dedication. Our vision is to raise the bar in the quality of care for all of our patients and their families. Your effort and loyalty plays a tremendous part in our success and contributes to our standing as a trusted and respected member of each of our communities. As we continue to grow as a company, the fulfillment of our vision depends on dedicated, hard-working individuals such as you.

Thank you for your service commitment and congratulations on your accomplishments.



David Causby
EVP, President
Kindred at Home